THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
TERRY J. ELLIS, Defendant-Appellant.

First District (4th Division)     No. 79-925

Opinion filed March 5, 1981.

Patrick J. Phillips, Lawrence C. Begun, and Brigitte S. Bell, all of Chicago (Jenner & Block, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Joan S. Cherry, and Thomas J. Leanse, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

Terry J. Ellis was tried by a jury and found guilty on charges of murder (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(a)(1)), robbery (Ill. Rev. Stat. 1977, ch. 38, par. 18—1), and burglary (Ill. Rev. Stat. 1977, ch. 38, par. 19—1). The court entered judgment on all three verdicts and sentenced the defendant to imprisonment for 26 years on the charge of murder, to be served concurrently with sentences of 7 years each for the robbery and burglary charges.

In this appeal, defendant contends the trial court erred by (1) refusing to instruct the jury on the charge of involuntry manslaughter; (2) refusing to instruct the jury on withdrawal from accountability; (3) allowing the jury to issue a statement requesting leniency while at the same time denying his request to poll the jury; and (4) sentencing him to an excessive term of 26 years' imprisonment.

We affirm.

On June 4, 1978, defendant, Terry Ellis, was with two acquaintances, James Jackson and Dawn Schreiber. They suggested that defendant go with them to take money from Vito Falcone, the man who lived with Schreiber. They planned to have Schreiber entice Falcone to bed and, once Falcone fell asleep, Jackson and defendant were to take his money. Schreiber went upstairs to Falcone's room but he did not fall asleep as anticipated. Instead, Schreiber urged Falcone to come downstairs to repair the shower in her apartment. When Falcone came downstairs, defendant and Jackson were waiting. They grabbed him, lowered him to the floor, and tied his hands. Falcone was placed on Schreiber's bed; defendant took Falcone's wallet which contained $42. Defendant then went upstairs to search Falcone's room for additional items of value. While defendant was upstairs, Schreiber and Jackson remained with Falcone. They proceeded to cover him with a sheet and mattress. Schreiber hit Falcone on the head with a hammer. The blow did not prove to be fatal, but it did cause serious contusions.

Jackson joined the defendant upstairs and together they loaded items from Falcone's room into Jackson's car. Jackson wanted to drive Falcone's car; defendant, in turn, drove alone in Jackson's car. Approximately 1 hour after defendant arrived at his home, Schreiber and Jackson arrived. It was at that time they told defendant that Schreiber had hit Falcone on the head with a hammer. Defendant expressed concern for Falcone's well-being and told Jackson to call the police in order to save Falcone.

Falcone's sister, Anna Liotta, found him dead the next morning. His body was covered by a sheet and underneath a mattress.

Four days after the death of Falcone, the defendant voluntarily surrendered to police. He was then arrested pursuant to a warrant

charging robbery only. Later, a six-count information was filed charging defendant and two others with robbery, burglary, and four counts of murder.

At trial, Falcone's sister testified that she saw her brother three times weekly and that he was in good health. Falcone's next-door neighbor also testified. She said she had seen Falcone on the day of the incident and he appeared to be in good health.

Dr. Lee F. Beamer, assistant medical examiner for Cook County, testified concerning Falcone's state of health and possible cause of death. The doctor said he had performed an autopsy on the decedent in June 1978. The report of that examination was lost. Therefore, the remains of the decedent were disentombed in order that another examination could be performed. The doctor stated he could not pinpoint the exact time of death, but he could determine that Falcone did not die from strangulation or from multiple contusions. He also found that Falcone's death was neither caused by the towel tied over his mouth nor the bindings on his hands or feet. In Dr. Beamer's opinion, death was caused by the narrowing of vessels or hardening of the arteries in the heart. The mechanical and psychological stress of being bound, struck and left under a mattress caused Falcone to die of a heart attack.

Defendant testified regarding the incident. He did not testify about the cause of Falcone's death. He did say that he knew Jackson and Schreiber as being neighbors in his apartment building. Defendant recounted the incident as described above and admitted having taken Falcone's wallet. He did not remember a fight or anyone having struck Falcone. Defendant testified he was greatly concerned for Falcone's life, which is why he asked Jackson to call the police. Finally, defendant concluded that he never intended to kill or injure Falcone, nor did he murder him.

At the close of trial, the court instructed the jury on each of the four alternative murder counts. When defendant presented instructions which included the statutory definitions of "intent" and "knowledge," the court refused to give them to the jury. The court also refused defendant's instructions which explained that the State's murder charges also contained the lesser offense of involuntary manslaughter. Over defendant's objections, the court agreed to instruct the jury on the law of accountability (Ill. Rev. Stat. 1977, ch. 38, par. 5—2(c)(3)) but refused defendant's jury instruction regarding withdrawal.

After receiving instructions, the jury deliberated. Prior to returning a verdict, the jury asked the court for permission to submit a statement which could be issued in addition to the verdict. The court approved the issuance of the following statement:

"We the jury while finding the defendant Terry Ellis guilty of murder, according to the law and evidence presented, respectfully request the Court, because of his past record, to consider leniency in the determination sentence."

Defendant requested that the jury be polled regarding the statement. The court denied this but acknowledged the extraordinary request for leniency. Despite the request, the court sentenced defendant to 26 years' imprisonment.

Defendant contends the trial court committed error by refusing to instruct the jury to find that he had only the requisite mental state to commit involuntary manslaughter, a lesser-included offense of murder. The State's response is that involuntary manslaughter requires the mental state of recklessness, and felony murder does not require that any mental state be shown.

Once again, we adopt the reasoning of this court set forth in *People v. Weathers* (1974), 18 Ill. App. 3d 338, 309 N.E.2d 795. In *Weathers*, the defendant was charged with and found guilty of murder, armed robbery and attempted robbery. The defendant argued the trial court erred in refusing to instruct the jury as to involuntary manslaughter and reckless conduct. He based the argument on the fact that, in his view, the jury could have found him guilty of an offense less than murder, *e.g.*, involuntary manslaughter. As here, it was the State's theory that defendant was guilty of murder under the so-called "felony murder rule" (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(a)(3)). In *Weathers*, the court said:

"No intent is required, and the accused need not be the actual perpetrator of the killing. (*People v. Brooks* (1972), 51 Ill. 2d 156, 281 N.E.2d 326.) It follows, then, that it would be impossible for one committing a homicide during the course of a forcible felony to be guilty of manslaughter." *Weathers*, 18 Ill. App. 3d 338, 346, 309 N.E.2d 795, 801.

■■ In the case at bar, defendant testified that he participated in the robbery. For that reason, a finding by the jury of manslaughter or reckless conduct could not be premised. Therefore, the trial court did not err in refusing to give defendant's proposed instructions regarding lesser offenses.

Defendant next proposes that the trial court erred in refusing to give instructions concerning his withdrawal from the criminal activity.

Section 5—2 of the Illinois Criminal Code (Ill. Rev. Stat. 1977, ch. 38, par. 5—2(c)(3)) provides:

"A person is legally accountable for the conduct of another when:

\* \* \*

(c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he

solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense. However, a person is not so accountable, unless the statute defining the offense provides otherwise, if:

           *   *   *

(3) Before the commission of the offense, he terminates his effort to promote or facilitate such commission, and does one of the following: wholly deprives his prior efforts of effectiveness in such commission, or gives timely warning to the proper law enforcement authorities, or otherwise makes proper effort to prevent the commission of the offense."

■■ In order to fall within the purview of the statute, not only must the accused terminate his criminal conduct before the offense is committed, he must also neutralize the effect of his conduct. See *People v. Cooper* (1975), 30 Ill. App. 3d 326, 332 N.E.2d 453.

■■ Defendant testified that he helped tie the hands of the victim; he also removed the victim's wallet containing $42. Though defendant testified he left the victim in good health, there is no evidence that he in any way sought to neutralize the conduct which led to the death of Falcone. While we acknowledge the evidence that defendant expressed concern for Falcone's safety, it falls short of meeting the requirements of withdrawal as set forth in the quoted statute. Without evidence to support it, no instruction regarding withdrawal from accountability could have been given.

Finally, we draw our attention to defendant's challenges which surround the jury's statement requesting leniency in the sentencing of defendant. Defendant suggests that in light of the statement, the jury should have been polled and the sentence should now be reduced.

The purpose of the poll of a jury is to determine whether the verdict has in fact been freely reached and remains unanimous. (*People v. Smith* (1977), 53 Ill. App. 3d 395, 368 N.E.2d 561.) As a general rule, a jury's recommendation of or request for leniency should be disregarded when evaluating the verdict. (See *People v. Masini* (1979), 78 Ill. 2d 17, 397 N.E.2d 1368.) Further, the imposition of a sentence is a matter of judicial discretion and absent an abuse of discretion the sentence will not be altered upon review. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882; *People v. Kirkwood* (1980), 82 Ill. App. 3d 252, 402 N.E.2d 677.

■■ The issue of leniency is best decided at the hearing prior to sentencing. (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(d).) In this case, the sentence was within the statutory limits. (Ill. Rev. Stat. 1977, ch. 38, par. 1005—8—1.) A hearing was held in aggravation and mitigation during which the trial court acknowledged the jury's request for leniency. There is no abuse apparent and it follows that the sentence should not be disturbed.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

ROMITI, P. J., and LINN, J., concur.