**UNITED STATES of America ex rel. Terry YOUNG, Petitioner-Appellant,**

v.

**Michael LANE, Director, Department of Corrections, and Neil F. Hartigan, Attorney General of Illinois, Respondents-Appellees.**

**No. 84–2783.**

United States Court of Appeals, Seventh Circuit.

Argued May 29, 1985.

Decided July 18, 1985.

---

Alison Edwards, Chicago, Ill., for petitioner-appellant.

Marcia L. Friedl, Asst. Atty. Gen., Chicago, Ill., for respondents-appellees.

Before FLAUM and EASTERBROOK, Circuit Judges, and WEIGEL, Senior District Judge.[*]

EASTERBROOK, Circuit Judge.

Terry Young participated in a gun duel in which two of his friends killed each other. Young and Edward Clerk were together when Clerk's mother announced that Michael Jackson, gun in hand, had come "looking" for Clerk. Young and Clerk then went "looking" for Jackson and found him. Clerk hit Jackson with a gun, and as Jackson reeled back Clerk fired. Jackson fired in return; Clerk fell, dead on the spot with a bullet in his head; Jackson stomped on Clerk's chest and fled. Young fired at the running Jackson with a sawed-off shotgun but missed. The miss made no difference. Jackson collapsed within a block and died. Clerk's bullet had pierced Jackson's heart.

## I.

Illinois prosecuted Young for murder, armed violence, and the unlawful use of weapons. At the conclusion of a bench trial the judge stated:

I am afraid, gentlemen, under the evidence and facts as elicited here, while [Young] did not fire any fatal shot [he] has been proven to be legally accountable for the actions of Edward Clerk. Were Clerk here and alive Clerk would definitely be guilty of murder.

I am quite certain that there is considerable mitigation here.

I can't find [Young] guilty of voluntary manslaughter. There is no evidence that

he was even acting in self-defense or sufficient to raise a self-defense claim, but with the mitigation that has been built into the facts as elicited I would be authorized and I think the fairest and the most reasonable finding is to the included offense in Count Six, armed violence....

[Young] will be found guilty of the included offense of armed violence and unlawful use of weapons, of course—unlawful use of weapons is actually part of the same act.

Perhaps we will take it up at sentence. Judgment on the finding. Presentence ordered. The matter will be continued for sentencing ...

The mitigation to which the judge referred apparently was that Jackson had been "looking" for Clerk rather than Young, and that Young did not fire until Clerk and Jackson had already killed each other. (Young, who did not have a record, also cooperated with the police.)

At the sentencing on May 20, 1981, a little more than a month later, the judge changed his perspective:

Since the finding, and since the completion of the trial, an Advanced Sheet Opinion has come down which causes me to think that, perhaps, improvidently I did not complete the record.... So, just to complete the record and, in fact, to correct any inadvertent omissions, the court does enter a finding of guilty of murder without going on a judgment of conviction.... The cause of death testified to as to Jackson was the bullet fired by Clerk, so actually there is one death here that [Young] is accountable for and that is the death of Jackson.

The judge referred to a case that had held impossible the imposition of a sentence for armed violence without a finding that the defendant was accountable for the underlying act of violence, *People v. Ellis*, 93 Ill.App.3d 981, 49 Ill.Dec. 444, 418 N.E.2d 88 (1st Dist.1981). Although the judge

---

[*] The Honorable Stanley A. Weigel, Senior District Judge for the Northern District of California, is sitting by designation.

made a "finding" that Young was guilty of Jackson's murder, he did not impose sentence for murder. The judge imposed a sentence of ten years' imprisonment for the crime of armed violence.

The prosecutor was unhappy with this disposition and sought a writ of mandamus from the Supreme Court of Illinois. That court held that the "finding" of guilt on murder should have been a "judgment" of guilt. It directed the trial judge "to enter a judgment of conviction pursuant to his finding of guilty of the offense of murder and to enter sentence thereon [and] to reconsider the sentence ... in light of *People v. King* (1977), 66 Ill.2d 551, [6 Ill.Dec. 891, 363 N.E.2d 838]." *People ex rel. Daley v. Samuels*, No. 55464 (Sept. 24, 1981). The trial judge complied with this order on October 14. He entered a judgment of conviction for murder and imposed a sentence of 20 years' imprisonment. He vacated the sentence for armed violence. On direct appeal the Appellate Court affirmed, rejecting the argument that this procedure violated the Double Jeopardy Clause. *People v. Young*, 116 Ill.App.3d 984, 72 Ill.Dec. 465, 452 N.E.2d 718 (1st Dist.1983). Young then sought release on habeas corpus, which the district court denied on the ground that the findings immediately after the trial established all of the elements of murder, so that the formal entry of judgment on the findings did not place Young in jeopardy a second time.

## II.

Young relies on the principle that acquittals in criminal cases are final. *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977). He maintains that the trial judge's statement at the end of the trial was an implied acquittal, as a result of which he cannot later be convicted of murder. *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), held that an implied acquittal on a charge of murder prevented a later trial on that offense. See also *Arizona v. Rumsey*, —— U.S. ——, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984), which

holds that an acquittal on the capital aspects of a murder charge prevents a later sentence of death.

■■■■ Although acquittals have a special status under the Double Jeopardy Clause, they are not always beyond recall. The Clause establishes three fundamental rights: the right to receive the decision of the finder of fact once a trial is under way, see *Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978); the right to keep the decision of the finder of fact if that decision resolves in the accused's favor a factual element of the offense, see *United States v. Scott*, 437 U.S. 82, 97, 98 S.Ct. 2187, 2197, 57 L.Ed.2d 65 (1978); and the right not to be punished twice for the same offense, see *Garrett v. United States*, —— U.S. ——, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985). The defendant's right to get a verdict if he wants one and keep it if he gets it protects his legitimate interest in a final disposition by a finder of fact. If the prosecutor could try repeatedly with multiple triers of fact, that would make the prosecutor's task easier (for the state could get a conviction even if a significant percentage of the total number of jurors who heard the evidence favored the defendant), and it would obliterate the defendant's right to keep a verdict based on "nullification" rather than a dispassionate assessment of the evidence. See Peter Westen & Richard Drubel, *Toward a General Theory of Double Jeopardy*, 1978 Sup.Ct.Rev. 81, 122–37.

■■■ The Clause does not protect all dispositions in favor of the accused, however, even if the defendant anticipates that a favorable decision is "final." If an appellate court reverses a judgment of guilt, that reversal usually is followed by a new trial even if the defendant thinks that the case is over. *Tibbs v. Florida*, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). If the jury returns a verdict of guilt, and the judge later rules in the defendant's favor (perhaps because the judge thinks the evidence insufficient), that decision may be reviewed and the verdict reinstated. *United States v. Scott, supra*, 437 U.S. at 91 &

n. 7, 98 S.Ct. at 90 & n. 7; *United States v. Wilson*, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975); *United States v. Allison*, 555 F.2d 1385 , 1386–87 (7th Cir.1977). If the judge imposes an insufficient sentence, perhaps because he either misunderstands the legal rules or does not appreciate the seriousness of the offense, another court may increase the sentence. *United States v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980) (increase based on statute allowing appeal); *Bozza v. United States*, 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818 (1947) (increase based on need to comply with statutory minimum sentence); *United States v. Jefferson*, 760 F.2d 821, 823–24 (7th Cir.1985) (increase on some counts in order to make entire sentencing package conform to original intent after other convictions have been vacated). *DiFrancesco* rejected (449 U.S. at 132–34, 101 S.Ct. at 434–36) the argument that the imposition of one sentence is an "implied acquittal" of a greater sentence.

The theme uniting these and other cases is that the Double Jeopardy Clause does not bar further proceedings that can be accomplished without subjecting the defendant to a new trial before another finder of fact. Unless there is a new trial, there cannot be a "second" jeopardy. "[A] defendant has no legitimate claim to benefit from an error of law when that error could be corrected without subjecting him to a second trial before a second trier of fact." *United States v. Wilson, supra*, 420 U.S. at 345, 95 S.Ct. at 1022 (footnote omitted).

Young was in jeopardy but once. He had a single trial. The trier of fact entered a single set of findings. These have become the basis of a variety of judgments, but these judgments all flow from findings that have been accepted without alteration or question. *Green* and *Rumsey*, which involved second trials, are irrelevant.

The trier of fact said from the start that Young was accountable for Jackson's death and that his claim of self-defense was unsupported. If the judge had immediately said: "Guilty as charged, but I will not enter a sentence because I think ten years for armed violence is punishment enough," then there could be no serious doubt about the propriety of what followed. Under *Wilson* the prosecution could have appealed, and an appellate court could have ordered the imposition of judgment for murder; under *DiFrancesco* and *Bozza* a court could have increased the sentence to take account of all appropriate factors. If the trial judge had entered a sentence of 20 years for murder, and the Appellate Court had reversed because it thought ten years enough, the Supreme Court of Illinois could have reversed in turn. There is no reason why this case should come out any differently. The trial judge used a terminology different from the expression above, but the meaning was the same. The Double Jeopardy Clause is not a constitutional requirement of perfect syntax. The defendant ought not go free because a judge expresses himself poorly. The substance of the matter is that the trier of fact found Young guilty as charged but decided to impose a lesser sentence. That decision, if erroneous, may be corrected.

One case gives us pause. In *Finch v. United States*, 433 U.S. 676, 97 S.Ct. 2909, 53 L.Ed.2d 1048 (1977), a district court held a trial on stipulated facts. The court found the defendant not guilty, based on a conclusion of law; the court of appeals held the legal conclusion erroneous and ordered the district judge to impose a sentence; the Supreme Court found this barred by the Double Jeopardy Clause because there was no formal finding of guilt to "reinstate." Relying on *United States v. Jenkins*, 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975), the Court held that whenever a reversal requires further proceedings in the trial court, the Double Jeopardy Clause bars the way.

The next year the Court overruled *Jenkins*, holding in *Scott* that further proceedings *are* permitted if they do not call into question factual findings favorable to the accused. The majority did not mention *Finch* in *Scott* (although the dissent did), and the Court has not cited *Finch* since.

We think that *Scott* overruled *Finch* along with *Jenkins. DiFrancesco* supports this belief, for in *DiFrancesco* the remand to increase the defendant's sentence involved more than just "reinstating" a judgment. As a result, the fact that the trial judge and the Supreme Court of Illinois did more than simply reinstate a judgment is not dispositive. If we are wrong, however, there is nonetheless a second ground on which the state's decision may be sustained.

### III.

The Supreme Court has never explained just *why* acquittals in criminal cases are more final than judgments in civil cases. Principles of preclusion make civil judgments final, if they are arrived at without substantial error, and one plausible reading of the Double Jeopardy Clause is as a constitutional requirement of issue and claim preclusion in criminal cases. See *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). Society has a pressing interest in the use of the criminal process to convict those who have committed crimes, see *Wade v. Hunter,* 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949); *United States v. Tateo,* 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964). Often a trial comes to a conclusion because of some legal error in the defendant's favor committed by the judge or prosecutor. In *Wade, Hunter, Illinois v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973), and many other cases, the Court has allowed retrials, interpreting the Double Jeopardy Clause to accommodate both the defendant's interest in finality and the public's interest in "fair trials designed to end in just judgments." *Wade, supra,* 336 U.S. at 689, 69 S.Ct. at 837.

 If the judge makes a mistake before trial, it can be corrected and the accused tried properly. E.g., *Serfass v. United States,* 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975); *United States v. Sanford,* 429 U.S. 14, 97 S.Ct. 20, 50 L.Ed.2d 17 (1976). If the judge makes a mistake after trial, that too can be corrected under *Wil-*

*son.* If the prosecution makes a mistake in drafting the indictment, and this causes a mid-trial dismissal, that may be corrected and the trial redone. *Illinois v. Somerville, supra; Lee v. United States,* 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977). If the judge makes a procedural mistake during trial, and the result is not an "acquittal," the mistake may be corrected and the defendant tried again. *United States v. Scott, supra.* All these further proceedings can be very costly indeed and lead to expense, anxiety, and a greater risk of conviction, but the Clause does not prevent all expense and inconvenience. But if the judge makes a legal error during trial that leads to an acquittal—even if error is blatant, and even if the defendant induced the judge to make the error—the resulting disposition is final. *Fong Foo v. United States,* 369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962); *Sanabria v. United States,* 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978).

It is hard to understand the special finality given to such mid-trial blunders. Why should one accused of crime go free because of a mid-trial blunder by a judge? In civil litigation a court may correct an error and continue with the proceedings until there is a single trial free from substantial error. This is not thought unduly oppressive to defendants. The Court's explanations of the acquittal rule are not airtight. *DiFrancesco* says (449 U.S. at 129, 101 S.Ct. at 433) that the special finality of an acquittal comes from the "public interest in finality," and *Sanabria* explains (437 U.S. at 78, 98 S.Ct. at 2186) that retrial after acquittal would "undercut the adversary assumption on which our system of criminal justice rests." These explanations have a good deal of plasticity to them. Perceptions of the "public interest" are not fixed, and the Court has held that many retrials do *not* "undercut the adversary assumption." All retrials expose defendants to expense and anxiety; all increase the risk of conviction.

The uncertain contours of the rule suggested by the explanations for it have led

to unstable doctrine through the years. The analogy between civil and criminal process, in particular, has fared better at some times than others. In *Kepner v. United States*, 195 U.S. 100, 24 S.Ct. 797, 49 L.Ed. 114 (1904), Justice Holmes and three other Justices concluded that the Double Jeopardy Clause does not forbid the Government to conduct one continuous proceeding until there is a verdict free from legal error. But in *Palko v. Connecticut*, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937) (Cardozo, J.), the Court held that a new trial after a verdict of acquittal by the jury is not oppressive and does not violate the Due Process Clause. It overruled *Palko* on double jeopardy grounds in *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). Justice Holmes did not carry the day in *Kepner*, and *Benton* rejected Justice Cardozo's view that states could use in criminal cases the same principles of preclusion they use in civil cases.

Other parts of the law of double jeopardy run no more smoothly, as *Scott* (overruling *Jenkins*), *Burks* (overruling three cases), and many turns of doctrine establish. Recent cases suggest a substantial transition toward the position of Justices Holmes and Cardozo. *Swisher v. Brady*, 438 U.S. 204, 98 S.Ct. 2699, 57 L.Ed.2d 705 (1978), dealt with a system in Maryland under which a master heard the evidence in certain criminal cases and gave conclusions to the judge, who would enter judgment. The master in *Swisher* reviewed the evidence and found the defendant not guilty; then the court reviewed it a second time, disagreed with the master, and entered a judgment of conviction. The Court held this permissible under the Double Jeopardy Clause on the ground that the master lacked any final authority to convict. Because he could not convict, his acquittals also were not final.

The dissenting Justices in *Swisher* accused the majority of adopting the position of Justice Holmes, which the Court had rejected in *Kepner*. See 438 U.S. at 225–27, 98 S.Ct. at 2711–13 (dissenting opinion). See also Western & Drubel, *supra*, 1978 S.Ct.Rev. at 135–37 (agreeing with the dissent that the Court all but adopted the Holmes view). The Court denied the accusation in *Swisher*, and as a rule it is far better to listen to the majority than to believe the dissent about the scope of a court's holding. Nonetheless, in 1984 the Supreme Court twice rendered opinions that explicitly employed the principle of "continuing jeopardy," the phrase Justice Holmes had used to describe his position in *Kepner*. See *Richardson v. United States*, — U.S. ——, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984); *Justices of Boston Municipal Court v. Lydon*, 466 U.S. 294, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984).

*Lydon* involved a two-tier system of trial for certain offenses in Massachusetts. The first trial is a bench trial. If the defendant is dissatisfied he may "appeal," and the result is an automatic new trial at which the prosecution must prove its case anew, to a jury if the defendant wishes. The defendant argued that the evidence at the first trial was insufficient as a matter of law, entitling him to be acquitted. Under *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), factual insufficiency bars a new trial. Cf. *Tibbs v. Florida, supra* (no bar if the facts are legally sufficient and the verdict is set aside only on discretionary grounds). The Supreme Judicial Court of Massachusetts had found the facts at the first trial legally insufficient, and the First Circuit held that this meant Lydon could not be tried again on the "appeal." But the Supreme Court disagreed. It characterized the two trials as a single continuous process for the determination of guilt or innocence. If state law did not accord finality to the disposition at the first trial, the Double Jeopardy Clause did not compel the procedure to come to a halt. The Court allowed the state to determine, as in *Swisher*, the degree of finality to be attached to the outcome of a particular stage in a "continuing jeopardy."

In *Richardson* the defendant's trial had ended in a mistrial. He maintained that a new trial would violate the Clause because the evidence at the first was insufficient.

The Court held, however, that his jeopardy had not yet "terminated," and as a result he could be retried without a "second" jeopardy. The Court concluded that the prosecution was entitled to carry on a continuous process ending in a verdict. See also *Ohio v. Johnson*, — U.S. —, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984), which holds that a state is not barred from prosecuting a greater offense just because the defendant pleads guilty to a lesser offense contained in the indictment; the Court thought that the state is entitled to one continuous procedure and a full chance to convict the accused—although all the Justices agreed that if Johnson had been charged only with the lesser offense, he could not have been charged with and convicted of the greater in a separate case. See also *Garrett v. United States, supra.*

■ The Court has yet to adopt all of Justice Holmes's view. Certainly it has not returned things to the days before *Benton,* when a state could apply to civil and criminal cases the same principles of preclusion. Cases such as *Arizona v. Rumsey* and *United States v. Martin Linen Supply Co.* demonstrate that "acquittals" continue to receive a special degree of finality. At the same time, the law of double jeopardy is closer to the view of Holmes and Cardozo than it was two years ago, and further change is in prospect. It is fair to say that states possess substantial latitude to decide *which* decisions in the criminal process are to be treated as "acquittals." If a state concludes that the recommendation of a master (*Swisher*) or the verdict of a judge (*Lydon*) or the inability of a jury to reach a verdict (*Richardson*) or the disposition of a single count (*Johnson*) is but a waystation en route to a final judgment, the Double Jeopardy Clause does not command a different approach.

■ The law of Illinois is that until the court enters the sentence, proceedings have not come to a conclusion. As the Appellate Court said in affirming Young's conviction: "[j]udgment means an adjudication by the court that the defendant is guilty or not guilty and if the adjudication is that the defendant is guilty it includes the sentence pronounced by the court. The final judgment in a criminal case is the imposition of sentence. The pronouncement of sentence is the act which embodies the judgment of the court. The sentence is a necessary part of a complete judgment of guilt. In the absence of a sentence a judgment of conviction is not final." 72 Ill.Dec. at 469, 452 N.E.2d at 722 (citations of state authorities omitted without indication).

As a matter of Illinois law, what a judge says immediately after the trial is just musing out loud. It is a recommendation from the judge to himself about what he should do at the time of judgment. The judge may change his mind because nothing is final. What the judge says after trial in Illinois is less "final" than the master's recommendation in *Swisher* or the judge's verdict in *Lydon.* In Massachusetts the first trier of fact may enter a real acquittal; in Maryland the master makes a particular recommendation. In Illinois, however, the judge's reflections immediately after trial are no more than verbal notes about what to do when the time comes. And the time does not come until the formal sentencing.

Suppose a federal district judge, after a bench trial, said to the defendant: "In light of the evidence of mitigation I have heard, I am inclined to find you not guilty. But I must consider my decision with greater care and read the pertinent cases. Your case is taken under advisement." If the judge later entered a judgment of guilt, there could be no serious argument that the judgment violated the Double Jeopardy Clause. Under the law of Illinois, what the trial judge did has the same effect as this statement of a district judge. See *People v. Young, supra,* 72 Ill.Dec. at 470, 452 N.E.2d at 723 ("the principle of an implicit acquittal did not become operative [at trial] because no convictions had then been entered on the other charges in the absence of any sentence thereon. Without such convictions, there was no implicit or equivalent acquittal on the murder charge"). Although some of the trial judge's language

here suggests a decision on the spot ("[j]udgment on the finding"), other parts of the statement suggest that significant proceedings are yet to come ("defendant *will be* found guilty of the included offense.... Perhaps we will take it up at sentence.") No matter what the judge *said*, however, Illinois law declares that what he *did* was to put things off for a final decision at the time of judgment. The Double Jeopardy Clause does not prevent Illinois from giving its trial judges time to re-think ill-considered statements they may issue immediately after hearing the evidence.

AFFIRMED.