(No. 92966.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. RAYSHUN PELT, Appellee.

*Opinion filed October 17, 2003.—Rehearing denied November 24, 2003.*

KILBRIDE, J., joined by McMORROW, C.J., and FREEMAN, J., specially concurring.

GARMAN, J., concurring in part and dissenting in part.

James E. Ryan and Lisa Madigan, Attorneys General, of Springfield, and Jeff Tomczak, State's Attorney, of Joliet (Joel D. Bertocchi and Gary Feinerman, Solicitors General, William L. Browers, Colleen M. Griffin, Lisa Hoffman and Linda Woloshin, Assistant Attorneys General, of Chicago, and Norbert J. Goetten, John X. Breslin and Dawn D. Duffy, of the Office of the State's Attorneys Appellate Prosecutor, of Ottawa, of counsel), for the People.

Dennis Doherty, of Chicago, for appellee, and Rayshun Pelt, of Dixon, appellee *pro se*.

JUSTICE FITZGERALD delivered the opinion of the court:

Following a jury trial in the circuit court of Will County, defendant, Rayshun Pelt, Sr., was found guilty of aggravated battery of a child, his infant son, Rayshun Pelt, Jr., and first degree felony murder predicated on aggravated battery of a child. Defendant was found not guilty of first degree knowing murder and involuntary manslaughter. After merging defendant's conviction for aggravated battery of a child with his felony-murder conviction, the court sentenced defendant to 46 years' imprisonment. A divided appellate court reversed defendant's convictions. For the reasons discussed below, we reverse in part, affirm in part, and remand this cause for further proceedings.

## BACKGROUND

On February 13, 1997, at approximately 4:30 p.m., police officer Donald Draksler responded to a radio announcement concerning an infant who was not breathing at a residence in the Village of Bolingbrook. Once inside the residence, Draksler went to an upstairs bedroom and observed defendant sitting on the edge of a bed, holding his 95-day-old son, Rayshun Pelt, Jr., in his lap. Defendant was rocking the infant back and forth and saying, "Wake up, baby, wake up." Draksler noticed that the infant had a yellowish cast and was not moving or breathing. He also could not detect a pulse. Draksler began cardiopulmonary resuscitation on the infant, and the infant regurgitated what appeared to be formula. He flipped the infant over and noticed stiffening in the back and the legs, clenching of the fists, and that the infant's temperature was below normal. In the ambulance, he noticed a bruise on the right side of the head and a purplish discoloration along the rib cage. A paramedic in the ambulance concluded that the infant was deceased. This paramedic and another police officer also noted a bruise

on the infant's cheek. The infant was later pronounced dead at the hospital.

A forensic pathologist, Dr. Shaku Teas, conducted an autopsy of the infant on February 14, 1997. She observed that the infant had external injuries on his face and head, including a "large boggy area" on the back of the head, bruising on the left temple, two bruises "right behind the eye and in the temple area," two bruises on the left cheek, a large bruise on the right cheek, as well as a scrape mark on the lower lip. In addition, she noted fractures to the infant's skull sustained at the time of death. The autopsy further revealed healing fractures on the ribs, and "obvious hemorrhage underneath the scalp." The rib injuries were anywhere from 10 days to one month old. Dr. Teas stated that these injuries would make the infant "crabby and crying, but doesn't have to necessarily warrant a visit to the physician or emergency room." She also noted wrist and ankle fractures that likely occurred days before the death of the infant. In Dr. Teas' opinion, the cause of death of the infant was "cerebral injuries due to multiple blunt force trauma." She classified all of the injuries as "non-accidental."

Detective Raymond Browne interviewed the defendant on Friday, February 14, 1997. Defendant initially stated that he was unaware of any problems with the infant the previous day until Kimberly Papa, the infant's mother, came home from work and later went in the bedroom to check on the infant. Defendant heard Papa yelling his name, and she told him that the baby was not breathing. Defendant's story evolved, however, as Detective Browne confronted him with the existence of injuries to the infant which were not consistent with his story. Defendant eventually stated that the baby had not stopped crying since it arrived home from the hospital in February. Defendant made a written statement in which he stated, "I was holding him and he wouldn't stop cry-

ing. I got upset and tried to throw him onto his bed, but I missed and he hit the dresser." In a tape-recorded statement, defendant said that the infant "kept on crying," and that he tried to throw the infant on the bed, but "I guess I threw him too far, cause [sic] he hit the dresser." Defendant picked him up, put him on his stomach, placed a blanket on him, and left the room. Defendant reiterated the veracity of an earlier statement that when he came back, he hurt his leg and grabbed it, causing him to fall on the infant. He denied that the infant hit a knob on the dresser.

Kimberly Papa, the infant's mother, stated that she could have caused the injuries to the infant's ankle, wrist, and rib in incidents occurring "weeks" before the death, including one incident where she tried to force a sleeper on the baby.

Defendant was indicted on three counts of first degree murder and one count of aggravated battery of a child. Prior to trial, the State nol-prossed count I, that defendant committed murder with the intent to do great bodily harm. 720 ILCS 5/9—1(a)(1) (West 1996). The jury found defendant not guilty of first degree murder based upon the charge that he, without lawful justification, caused the death of his son, knowing that his acts created a strong probability of death or great bodily harm (720 ILCS 5/9—1(a)(2) (West 1996)). The jury also found defendant not guilty of involuntary manslaughter (720 ILCS 5/9—3(a) (West 1996)). The jury found defendant guilty of aggravated battery of a child, in that defendant knowingly caused great bodily harm to his son, a child under the age of 13 years (720 ILCS 5/12—4.3 (West 1996)) and first degree felony murder, in that defendant caused the death of his son while committing the forcible felony of aggravated battery of a child (720 ILCS 5/9—1(a)(3) (West 1996)). At sentencing, the trial court merged the aggravated battery of a child conviction with

the first degree felony murder conviction. The trial judge sentenced him to 46 years in prison.

On appeal, the appellate court held that the finding of not guilty for knowing murder was legally inconsistent with the finding that defendant was guilty of aggravated battery of a child. No. 3—00—0255 (unpublished order under Supreme Court Rule 23). The appellate court reversed defendant's conviction for aggravated battery of a child pursuant to *People v. Klingenberg*, 172 Ill. 2d 270 (1996). The court further held that "[w]ithout a valid conviction on the aggravated battery charge, the conviction for felony-murder which that crime supports must also be reversed." The appellate court alternatively held that even if there was no inconsistency, our decision in *People v. Morgan*, 197 Ill. 2d 404 (2001), required that aggravated battery could not be a predicate offense for felony murder.

In a special concurrence and dissent, Justice Homer agreed with the appellate court majority that, in light of *Morgan*, defendant's conviction for felony murder could not stand. Justice Homer, however, did not find the acquittal for knowing murder to be inconsistent with the finding of guilt of aggravated battery. We granted the State's petition for leave to appeal. 177 Ill. 2d R. 315. Because the appellate court judgment presents only issues of law, our review is *de novo*. *People v. Johnson*, 206 Ill. 2d 348, 359 (2002).

## ANALYSIS

The State initially argues that we should reverse the appellate court because the jury's finding of guilt on aggravated battery of a child was not inconsistent with a finding of not guilty of knowing murder. If the findings are inconsistent, the State asserts, this court should decline to follow our decisions in *People v. Frias*, 99 Ill. 2d 193 (1983), and *People v. Klingenberg*, 172 Ill. 2d 270 (1996), or that the court should find any error to be

harmless. Defendant responds that the verdicts are legally inconsistent, and the court should continue to follow *Klingenberg*.

Subsequent to briefing and argument in this matter, we reconsidered and overruled *Klingenberg*. *People v. Jones*, 207 Ill. 2d 122 (2003). In overruling *Klingenberg*, we held that criminal "defendants in Illinois can no longer challenge convictions on the sole basis that they are legally inconsistent with acquittals on other charges." *Jones*, 207 Ill. 2d at 133-34. For this reason, we need not examine whether the jury's findings were inconsistent because even if they were, the jury's findings of guilt stand. Therefore, we reverse the appellate court on this issue.

We turn to the alternate holding of the appellate court. According to both the majority and the dissent, defendant's conviction for felony murder was improperly predicated upon aggravated battery, in contravention of *People v. Morgan*, 197 Ill. 2d 404 (2001). Defendant accurately asserts that the State failed to raise this argument in its petition for leave to appeal to this court (see 177 Ill. 2d R. 315(b)(3) (the petition shall state "the points relied upon for reversal of the judgment of the Appellate Court")). A party's failure to raise an argument in the petition for leave to appeal may be deemed a waiver of that argument. *People v. Donoho*, 204 Ill. 2d 159, 169 (2003). However, the rule of waiver is a limitation on the parties and not on the court. *Donoho*, 204 Ill. 2d at 169. We choose to address the issue.

The State contends that the facts of this case are squarely on point with *People v. Viser*, 62 Ill. 2d 568 (1975), rather than *People v. Morgan*, 197 Ill. 2d 404 (2001), and therefore defendant's felony-murder conviction based on the predicate of aggravated battery of a child should be upheld. Defendant responds that defendant's conduct was similar to that in *Morgan*, in that the

acts charged arose from and were inherent in the act of murder itself; thus, those acts cannot serve as predicate felonies for the charge of felony murder. We find that *Morgan* controls the present matter.

In *Morgan*, we discussed the circumstances in which forcible felonies may serve as predicates for the charge of felony murder. The *Morgan* defendant, who was 14 years old at the time, shot his grandmother in the back as she was fleeing her home. He attempted to shoot her again as she was lying on the ground in the front yard, but the gun jammed. The *Morgan* defendant was convicted, *inter alia*, of felony murder predicated on both aggravated battery and aggravated discharge of a firearm. The appellate court noted that to allow such a conviction for felony murder to stand could "effectively eliminate the second degree murder statute" and also "eliminate the need for the State to prove an intentional or knowing killing in most murder cases." *People v. Morgan*, 307 Ill. App. 3d 707, 712 (1999). The appellate court held that "the predicate felony underlying a charge of felony murder must involve conduct with a felonious purpose other than the killing itself." *Morgan*, 307 Ill. App. 3d at 714. The appellate court therefore reversed the defendant's conviction.

On appeal, we found that a "cause and effect relationship" between the shooting and the killing was "not so clear." *Morgan*, 197 Ill. 2d at 447. We agreed with the appellate court that where "the acts constituting forcible felonies arise from and are inherent in the act of murder itself, those acts cannot serve as predicate felonies for a charge of felony murder." *Morgan*, 197 Ill. 2d at 447. In so concluding, we also approved of the appellate court's holding regarding felonious purpose. *Morgan*, 197 Ill. 2d at 458. Applying these principles, we held that the forcible felonies underlying the murder charge "were acts that were inherent in, and arose out of, the fatal shootings." *Morgan*, 197 Ill. 2d at 447.

Our task here is to discern from defendant's conduct whether defendant's aggravated battery was an act that was inherent in, and arose out of, the killing of the infant. Like *Morgan*, the cause and effect relationship between the aggravated battery and the killing is muddled. Defendant's statement indicated that he was upset when the infant would not stop crying, and that he tried to throw him to the bed. He stated that he apparently threw him too far "[be]cause he hit the dresser." The act of throwing the infant forms the basis of defendant's aggravated battery conviction, but it is also the same act underlying the killing. Therefore, as in *Morgan*, it is difficult to conclude that the predicate felony underlying the charge of felony murder involved conduct with a felonious purpose other than the conduct which killed the infant.

We also note that the present matter illustrates our apprehension that to permit such a felony-murder charge of this nature would " 'eliminate the need for the State to prove an intentional or knowing killing in most murder cases.' " *Morgan*, 197 Ill. 2d at 447, quoting *Morgan*, 307 Ill. App. 3d at 712. The prosecution attempted to establish a knowing killing by defendant. The jury rejected this charge and instead found defendant guilty of aggravated battery of the infant. Our holding ensures that defendant will not be punished as a murderer where the State failed in proving to the jury that a knowing murder occurred. Accordingly, we hold that the acts charged here cannot serve as the predicate felony to the charge of felony murder.

## CONCLUSION

For the foregoing reasons, we reverse that part of the appellate court's judgment that reversed defendant's conviction for aggravated battery of a child and we affirm the circuit court's judgment of guilt of this offense. However, we agree with the appellate court's holding

that aggravated battery improperly served as the predicate for felony murder and thus we affirm that part of the appellate court's judgment reversing defendant's conviction for the offense of felony murder. This cause is remanded to the circuit court for sentencing on defendant's conviction of aggravated battery of a child.

> *Appellate court judgment affirmed*
> *in part and reversed in part;*
> *circuit court judgment affirmed*
> *in part and reversed in part;*
> *cause remanded.*

JUSTICE KILBRIDE, specially concurring:

In *People v. Jones*, 207 Ill. 2d 122 (2003), this court reconsidered and overruled *Klingenberg*. I dissented from the majority in *Jones*, in large part, because of the majority's unwarranted abandonment of the principle of *stare decisis* and because I believe that the case should have been analyzed on an entirely different basis that would have avoided a reconsideration of *Klingenberg*. Today's decision follows *Jones*. While I believe that in *Jones* this court unnecessarily and unwisely overruled *Klingenberg*, *Jones* is now the law and, accordingly, the result in this case is mandated by principles of *stare decisis*.

CHIEF JUSTICE McMORROW and JUSTICE FREEMAN join in this special concurrence.

JUSTICE GARMAN, concurring in part and dissenting in part:

I agree with the majority that the issue of seemingly inconsistent verdicts in this case is resolved by our recent decision in *People v. Jones*, 207 Ill. 2d 122 (2003). I write separately, however, to express my concern with the majority's application of *People v. Morgan*, 197 Ill. 2d 404 (2001), as it pertains to the question of whether defen-

dant's conviction of aggravated battery of a child, under the facts of this case, may serve as the predicate felony for a conviction of felony murder.

In *Morgan*, the 14-year-old defendant did not deny that he intentionally shot and killed his grandparents. Rather, his defense was that he shot his grandfather in self-defense, or, in the alternative, that the killing of his grandfather was mitigated by "sudden and intense passion resulting from serious provocation" (720 ILCS 5/9—2(a)(1) (West 1994)), based on his grandfather's beating him with a leather strap shortly before the shooting and his grandfather's previous threats to kill him. He claimed to have shot his grandmother while acting under the same serious provocation. *People v. Morgan*, 307 Ill. App. 3d 707, 709-10 (1999). He was convicted of second degree murder for the killing of his grandfather and of first degree murder for the killing of his grandmother. *Morgan*, 307 Ill. App. 3d at 710. The verdict forms did not reveal whether the jury's verdict of first degree murder was based on a finding of intentional murder, knowing murder, or felony murder. *Morgan*, 307 Ill. App. 3d at 712.

A person who kills another without lawful justification commits first degree felony murder if "in performing the acts which cause the death *** he is attempting or committing a forcible felony other than second degree murder." 720 ILCS 5/9—1(a)(3) (West 1996). Morgan argued on appeal that when he shot his grandmother he was not attempting or committing the forcible felony of aggravated battery and discharge of a firearm. He admitted that he shot her with the intent to kill. Thus, he argued, he could be convicted of intentional or knowing murder (720 ILCS 5/9—1(a)(1), (a)(2) (West 1994)), or of second degree murder (720 ILCS 5/9—2 (West 1994)), but not of felony murder. *Morgan*, 307 Ill. App. 3d at 712.

The appellate court recognized that if the felony-murder rule could be applied in such a case, any deliberate killing and any fatal shooting could be charged as felony murder, effectively eliminating both a defendant's ability to argue that his offense constituted second degree murder and the State's burden of proving intentional or knowing murder. *Morgan*, 307 Ill. App. 3d at 712. After reviewing our case law and the scholarly commentary regarding felony murder, the appellate court held that "the predicate felony underlying a charge of felony murder must involve conduct with a *felonious purpose* other than the killing itself." (Emphasis added.) *Morgan*, 307 Ill. App. 3d at 714.

This court affirmed that portion of the appellate court judgment dealing with the scope of the felony-murder statute. In formulating its holding, however, this court, perhaps unintentionally, altered the focus of the inquiry. Instead of asking whether the defendant had an independent felonious purpose when he committed the act that resulted in the killing, this court asked whether the act constituting the forcible felony arose from and was inherent in the act of murder itself. *Morgan*, 197 Ill. 2d at 447.

The rule formulated by the appellate court distinguished felony murder from other forms of first degree murder on the basis of the killer's mental state. If the killer intends to kill, or acts with knowledge that his conduct is likely to kill, he is guilty of first degree intentional or knowing murder. If, however, he does so "under a sudden and intense passion resulting from serious provocation" (720 ILCS 5/9—2(a)(1) (West 1996)), or in the sincere but unreasonable belief in the need for self-defense (720 ILCS 5/9—2(a)(2) (West 1996)), his offense is mitigated to second degree murder. In such a case, he may not be convicted of felony murder because he lacks the intent to commit an independent forcible

felony. See *Morgan*, 307 Ill. App. 3d at 713 (citing *People v. Pugh*, 261 Ill. App. 3d 75 (1994), and *People v. Jenkins*, 190 Ill. App. 3d 115 (1989) (felony-murder conviction is proper where defendant intended to commit aggravated battery or aggravated discharge of a firearm and a death resulted from the use of violence)).

In contrast, the rule formulated by this court, instead of requiring that a charge of felony murder be based on "conduct with *a felonious purpose* other than the killing itself" (emphasis added) (*Morgan*, 307 Ill. App. 3d at 714), requires that the charge be based on *conduct* other than the killing itself (*Morgan*, 197 Ill. 2d at 447). This rule, which focuses on the defendant's conduct rather than his mental state, if literally applied, would preclude a charge of felony murder unless the defendant engaged in forcible felonious conduct in addition to the act that caused the killing. Thus, a charge of felony murder could not be predicated on aggravated battery or aggravated discharge of a firearm unless the defendant's felonious conduct included acts other than the shooting or the beating that killed the victim. This rule misapprehends the very nature of the felony murder rule—to impute the intent to kill to one who intends to commit a forcible felony, including aggravated battery and aggravated discharge of a firearm, if he kills while doing so.

Applying the conduct-based rule of *Morgan* to the present case, the majority states that its task is "to discern *from defendant's conduct* whether defendant's aggravated battery was an act that was inherent in, and arose out of, the killing of the infant." (Emphasis added.) 207 Ill. 2d at 442. Further, the majority finds, "[l]ike *Morgan*, the cause and effect relationship between the aggravated battery and the killing is muddled." 207 Ill. 2d at 442.

The relationship between the defendant's actions and the resulting killing in *Morgan*, however, was not

"muddled." Indeed, the relationship was crystal clear—Morgan admitted that he aimed a gun at his grandmother and pulled the trigger with the intent to kill her. Thus, a charge of felony murder could not lie because he lacked intent to commit any felony other than the murder itself. The only proper question for the jury in *Morgan* was whether the defendant had proven facts that would mitigate his offense to second degree murder.

In the present case, an infant died as a result of multiple blunt force trauma. Defendant admitted that he threw the crying infant against a dresser and also that he fell on the baby. Whether he intended to kill the child, or knew that his acts created a strong probability of death, or intended to commit the felony of aggravated battery is a question for the jury to decide based on its finding of fact as to his mental state at the time.

The present case offers this court the opportunity to remedy its imprecise formulation of the holding in *Morgan* and to put the focus of the inquiry where it properly belongs—on the mental state of the defendant when he committed the acts that resulted in the killing. If, as in the present case, there is no conceivable set of facts under which the defendant's actions might constitute second degree murder and the defendant's mental state is unknown, the question of whether he committed intentional, knowing, or felony murder is a question of fact properly decided by the jury.

The need for such clarification is supported by the fact that this court, in adopting *Morgan*, did not overrule its earlier decision in *People v. Viser*, 62 Ill. 2d 568 (1975), which predates the amendments to our murder statute creating the offense of second degree murder. In *Viser*, two armed but off-duty police officers encountered the seven defendants, who were on their way from a tavern to a party. Words were exchanged. After the officer's drew their guns and identified themselves, the confrontation

escalated. The defendants disarmed the officers and threw them to the ground, kicking and beating them. One defendant jumped with both feet on the chest of one of the officers. He died two weeks later as a result of his injuries. The defendants were charged with felony murder in the death of one victim and attempted murder as to the other victim. *Viser*, 62 Ill. 2d at 575-76.

The defendants argued that they could not be charged with felony murder based on the underlying felony of aggravated battery committed against the same victim, because aggravated battery is an "included offense" of murder. *Viser*, 62 Ill. 2d at 577. This court acknowledged that "[m]ost felony murders, if not all of them, involve an aggravated battery" (*Viser*, 62 Ill. 2d at 579), but rejected the defendants' "theory of merger," based on the existing statute's "forthright characterization of aggravated battery as one of the forcible felonies that will trigger a charge of felony murder." *Viser*, 62 Ill. 2d at 579-80, citing Ill. Rev. Stat. 1973, ch. 38, par. 2—8. Further, in rejecting the additional charge of attempted murder, this court noted that "the distinctive characteristic of felony murder is that it does not involve an intention to kill." *Viser*, 62 Ill. 2d at 581. The *Viser* court clearly understood that it is the mental state of the actor that determines whether a charge of felony murder may lie.

Although the statute has since been amended, the definition of "forcible felony" continues to include aggravated battery as well as robbery, burglary, arson, kidnaping, sexual assault, and "any other felony which involves the use or threat of physical force or violence against any individual." 720 ILCS 5/2—8 (West 2000). Thus, any of the enumerated forcible felonies, with the exception of second degree murder, may be the predicate felony for a charge of felony murder (720 ILCS 5/9—1(a)(3) (West 1996)), unless, as in *Morgan*, the defendant commits the act with the specific intent to kill.

This court's opinion in *Viser*, combined with a more precise formulation of the rule adopted in *Morgan*, would resolve the present case and would provide our circuit courts and prosecutors with the guidance they need regarding the proper application of the felony-murder rule. I, therefore, dissent from the portion of the majority opinion reversing defendant's conviction for felony murder.