THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALBERT BOYD, Defendant-Appellant.

Fourth District   No. 4—04—0289

Argued January 13, 2005.—Opinion filed March 16, 2005.

Daniel M. Kirwan and Dan W. Evers (argued), both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

John P. Schmidt, State's Attorney, of Springfield (Norbert J. Goetten, Robert J. Biderman, and Anastacia R. Brooks (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE COOK delivered the opinion of the court:

In April 1996, a jury convicted defendant, Albert Boyd, of the first degree felony murder (720 ILCS 5/9—1(a)(3) (West 1994)) of Amanda Mulry. In June 1996, the trial court sentenced him to 50 years' imprisonment. On appeal of the December 2003 second-stage dismissal of his postconviction petition, he argues his first degree murder convic-

tion must be vacated because of the Supreme Court of Illinois's decision in *People v. Morgan*, 197 Ill. 2d 404, 758 N.E.2d 813 (2001). We affirm.

## I. BACKGROUND

On August 14, 1995, defendant was charged with one count of first degree felony murder (720 ILCS 5/9—1(a)(3) (West 1994)) in that he, without lawful justification while committing a forcible felony, aggravated discharge of a firearm (720 ILCS 5/24—1.2(a)(2) (West 1994)), shot into a vehicle occupied by Amanda Mulry and thereby caused her death. Defendant was also charged with aggravated discharge of a firearm (720 ILCS 5/24—1.2 (West 1994)) in that he knowingly discharged a firearm in the direction of a vehicle he knew to be occupied.

Defendant moved to dismiss the first degree murder charge based upon a felony-murder theory, arguing that aggravated discharge of a firearm is not a "forcible felony" as required by the first degree murder statute (720 ILCS 5/9—1(a)(3) (West 1994)) and that he committed the offense of involuntary manslaughter by performing reckless acts resulting in the unintentional death of Amanda Mulry. The trial court denied the motion. The case proceeded to a jury trial.

The following was elicited at the trial. Defendant's brother, Amanda Mulry, and two other people drove in one car to defendant and his brother's house. Defendant's brother went inside the house while the other three people remained in the car. In the house, defendant and his brother began arguing and wrestling. Defendant's brother ran out of the house, and the three remaining people drove off without him. Amanda Mulry sat in the front passenger seat. The driver looked back as he drove and saw defendant holding a gun. The driver heard gunshots, and Amanda said, "I'm hit," and fell into his lap. Amanda bled to death. A detective read to the jury defendant's written statement admitting that he had been fighting with his brother and followed him outside. Defendant thought his brother was in the car, so he "started shooting wildly" at the car, hoping to "scare [his] brother off."

The trial court instructed the jury (1) a person commits the offense of first degree felony murder when he kills an individual if, in performing the acts which cause the death, he is committing the offense of aggravated discharge of a firearm; (2) a person commits the offense of aggravated discharge of a firearm when he knowingly discharges a firearm in the direction of a vehicle he knows to be occupied; (3) a mitigating factor exists so as to reduce the offense of first degree murder to the lesser offense of second degree murder if, at the

time of the killing, defendant acted under a sudden and intense passion resulting from serious provocation by his brother, but he negligently or accidently killed the deceased; and (4) a person acts recklessly when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care that a reasonable person would exercise in the situation.

The jury found defendant guilty of first degree felony murder and aggravated discharge of a firearm. The trial court denied defendant's motion for a new trial, which claimed aggravated discharge of a firearm is not a proper predicate for felony murder. The court sentenced defendant to 50 years in prison for murder. On direct appeal, this court affirmed defendant's conviction. *People v. Boyd*, No. 4—96—0496 (May 5, 1998) (unpublished order under Supreme Court Rule 23). In September 1996, defendant filed a *pro se* motion under section 2—1401 of the Code of Civil Procedure (735 ILCS 5/2—1401 (West 1996)) for postconviction relief based on newly discovered evidence; in May 1998, the trial court denied it; and this court again affirmed (*People v. Boyd*, No. 4—98—0370 (June 4, 1999) (unpublished order under Supreme Court Rule 23)).

In April 1999, defendant then filed a postconviction petition that the trial court dismissed as frivolous and without merit. We reversed and remanded the case to the circuit court for further proceedings on the petition. *People v. Boyd*, No. 4—00—0725 (January 11, 2002) (unpublished order under Supreme Court Rule 23). Appointed counsel filed an amended petition, asserting that the Supreme Court of Illinois's holding in *Morgan*, 197 Ill. 2d 404, 758 N.E.2d 813, required vacation of his conviction. The State argued *Morgan* should not be applied retroactively; and in December 2003, the trial court agreed. This appeal followed.

## II. ANALYSIS

Defendant appeals the second-stage dismissal of his postconviction petition, claiming he was improperly convicted of first degree felony murder with the underlying felony being aggravated discharge of a firearm and that his conviction must be vacated according to the Supreme Court of Illinois's decision in *Morgan*, 197 Ill. 2d 404, 758 N.E.2d 813. The State contends that the supreme court's *Morgan* decision does not apply to the facts of this case; and even if it did apply, the decision announced a new rule that does not apply retroactively to cases on collateral review.

### A. Application of *Morgan*

In 1999, this court held in *People v. Morgan*, 307 Ill. App. 3d 707,

714, 708 N.E.2d 206, 212 (1999), that the aggravated-battery and aggravated-discharge-of-a-firearm charges in that case were not independent of the murder and could not support the felony-murder charge. In that case, a 14-year-old boy shot and killed his grandparents after his grandfather beat him with a razor strap for receiving a detention. After the punishment, the boy took his grandfather's gun and shot a bottle, hoping to provoke his grandfather into killing him. After shooting the bottle, though, the boy encountered his grandfather and shot him. His grandmother started screaming, and he shot her as she ran out of the house. The boy was convicted of first degree felony murder of his grandmother with the predicate felonies being aggravated battery and aggravated discharge of a firearm. We held as follows:

> "[T]he predicate felony underlying a charge of felony murder must involve conduct with a felonious purpose other than the killing itself. Because the record in this case fails to show the commission of a predicate felony that had an independent felonious purpose, we conclude that the trial court erred by instructing the jury that defendant could be convicted of first degree murder on a felony[-]murder theory." *Morgan*, 307 Ill. App. 3d at 714, 718 N.E.2d at 212.

We did note that "aggravated battery and aggravated discharge of a firearm remain bases for a felony[-]murder instruction as long as those crimes are not merely incidental to the murder itself." *Morgan*, 307 Ill. App. 3d at 715, 718 N.E.2d at 213.

On appeal in 2001, the Supreme Court of Illinois agreed that "where the acts constituting forcible felonies arise from and are inherent in the act of murder itself, those acts cannot serve as predicate felonies for a charge of felony murder." *Morgan*, 197 Ill. 2d at 447, 758 N.E.2d at 838. The supreme court noted "[i]t is arguable that it was not the predicate felonies which resulted in and caused the murders of [the grandfather and grandmother], but rather that it was the murders of [the grandfather and grandmother] which gave rise to the predicate felonies." *Morgan*, 197 Ill. 2d at 447, 758 N.E.2d at 838.

In *People v. Pelt*, 207 Ill. 2d 434, 800 N.E.2d 1193 (2003), the Supreme Court of Illinois next addressed the issue of whether a predicate felony underlying the charge of felony murder involved conduct with a felonious purpose other than the conduct that caused the killing. In that case, the court affirmed the appellate court's reversal of a felony-murder conviction in which the act of throwing a baby was the basis for both a conviction of aggravated battery of the child and felony murder. *Pelt*, 207 Ill. 2d at 443, 800 N.E.2d at 1197. The *Pelt* court referred with approval to the Fourth District's holding

in *Morgan*, 307 Ill. App. 3d 707, 708 N.E.2d 206, that an independent felonious purpose is required for a predicate felony to be the basis of felony murder. *Pelt*, 207 Ill. 2d at 441, 800 N.E.2d at 1197. Once again, the supreme court determined that the aggravated battery was "an act that was inherent in, and arose out of, the killing." *Pelt*, 207 Ill. 2d at 442, 800 N.E.2d at 1197. The supreme court went on to question whether the predicate felony "involved conduct with a felonious purpose other than the conduct which killed the infant." *Pelt*, 207 Ill. 2d at 442, 800 N.E.2d at 1197. The *Pelt* court defined its task as discerning "from defendant's conduct whether defendant's aggravated battery was an act that was inherent in, and arose out of, the killing of the infant." *Pelt*, 207 Ill. 2d at 442, 800 N.E.2d at 1197.

The Supreme Court of Illinois addressed the issue again in *People v. Davis*, 213 Ill. 2d 459, 470-75, 821 N.E.2d 1154, 1160-63 (2004). In that case, the defendant was convicted of felony murder predicated on the forcible felony of mob action (720 ILCS 5/25—1(a)(1) (West 2002)). The victim had gone to the defendant's neighborhood looking for a television he assumed his girlfriend and two sisters sold in exchange for crack cocaine. After he asked about the television, an argument ensued, and a group of people began hitting the victim and others with him. The defendant was identified as being one of the people who joined in the beating. *Davis*, 213 Ill. 2d at 463-64, 821 N.E.2d at 1157.

■ In upholding the defendant's first degree murder conviction based on felony murder, the court referred to its holdings in *Morgan* and *Pelt* as establishing the rule that where " 'the acts constituting forcible felonies arise from and are inherent in the act of murder itself, those acts cannot serve as predicate felonies for a charge of felony murder.' " *Davis*, 213 Ill. 2d at 472, 821 N.E.2d at 1162, quoting *Morgan*, 197 Ill. 2d at 447, 758 N.E.2d at 838. After citing *Morgan* and *Pelt* with approval, the *Davis* court stated "[t]he evidence at trial demonstrates defendant's conduct was not an act that was inherent in, and arose out of, the killing of [the victim]." *Davis*, 213 Ill. 2d at 474, 821 N.E.2d at 1163. The supreme court went on: "Simply stated, the same evidence was not used to prove both the predicate felony, mob action, and the murder." *Davis*, 213 Ill. 2d at 474, 821 N.E.2d at 1163. Finally, the *Davis* court stated, "[u]nlike *Morgan* and *Pelt*, we are able to conclude that the predicate felony underlying the charge of felony murder involved conduct with a felonious purpose other than the conduct which killed [the victim]." *Davis*, 213 Ill. 2d at 474, 821 N.E.2d at 1163.

### B. Justice Garman's Special Concurrence in *Davis*

In summary, there is a concern that the State may avoid the

burden of proving an intentional or knowing killing in first degree murder cases by simply charging felony murder based on one of the predicate felonies that tend to accompany all murders. *Davis*, 213 Ill. 2d at 482, 821 N.E.2d at 1168 (Garman, J., specially concurring). Charging felony murder also prevents the defendant from requesting an instruction on second degree murder even though there is evidence of provocation or unreasonable belief of justification. *Davis*, 213 Ill. 2d at 482, 821 N.E.2d at 1168 (Garman, J., specially concurring).

Justice Garman, specially concurring in *Davis*, noted that a number of approaches had evolved in determining when felony murder can be charged: the merger or "integral part" doctrine, where a felonious assault can never be the basis for felony murder; the "same act" doctrine, which expands the merger doctrine to any predicate felony whether or not it involved an assault; and the "independent felonious purpose" doctrine. There were problems with those doctrines. The "same act" doctrine would prevent a felony-murder prosecution where a single act of arson resulted in the unintentional death of an occupant of a building, a seemingly logical situation for a felony-murder charge. Both the merger doctrine and the "same act" doctrine were rejected in an earlier case, *People v. Viser*, 62 Ill. 2d 568, 343 N.E.2d 903 (1975), in light of the legislature's " 'forthright characterization of aggravated battery as one of the forcible felonies that will trigger a charge of felony murder.' " *Davis*, 213 Ill. 2d at 490, 821 N.E.2d at 1172 (Garman, J., specially concurring), quoting *Viser*, 62 Ill. 2d at 579-80, 343 N.E.2d at 909. The *Davis* majority in fact reaffirmed *Viser*.

In the present case, defendant did not intend to kill Amanda Mulry. He may have mistaken her for his brother, but he did not intend to kill his brother, only to "scare" him by "shooting wildly" at the car he believed he was in. Under the "same act" doctrine, it appears that felony murder should not be charged. Only one act occurred here, the firing of the weapon. Under Justice Garman's view, however, a felony-murder charge was appropriate. "When one commits the forcible felony of aggravated discharge of a firearm and *unintentionally* causes a death, it cannot be said that the firing of the gun was inherent in and arose from the killing. The opposite is true—the killing arises or flows from the defendant's intent to commit the independent felony and his acting on that intent." (Emphasis added.) *Davis*, 213 Ill. 2d at 492, 821 N.E.2d at 1173 (Garman, J., specially concurring). When the intent is to kill, there is no predicate felony; it is only when there is no intent to kill that a predicate felony is possible. At first glance, it is surprising that a defendant has to admit to intent to murder to take felony murder off the table. That approach, however, does preserve defendant's right to a second degree murder instruction on provoca-

tion or unreasonable belief of justification. A defendant who did not intend to kill the victim could not have been provoked.

Should aggravated discharge of a firearm never be the predicate felony for felony murder, even where defendant does not intend to kill the victim? Should a person who wildly discharges a weapon in the presence of others be treated better than a person who robs a shopkeeper? When a defendant commits a forcible felony, such as the robbery of a shopkeeper, he is engaging in a risky activity where the death of individuals is highly possible. If the death is unintended, defendant is guilty of felony murder. If the death is intentional, defendant is guilty of intentional murder. In either event, intentional or unintentional killing, defendant's conduct warrants a murder conviction. How is it different where a defendant commits aggravated discharge of a firearm by carelessly discharging a firearm in the direction of a building or vehicle that may be occupied? Again, defendant is engaging in a risky activity where the death of individuals is highly possible. If the death is unintended, felony murder seems equally appropriate to felony murder in the robbery of a shopkeeper.

The major question is whether the defendant may request a second degree murder instruction that there was provocation or belief of justification. Where the aggravated discharge of a firearm is not a separate offense but only the act that is always present when a defendant attempts to murder someone with a firearm, the prosecution may attempt to avoid the provocation defense by charging only felony murder. Justice Garman would deny the prosecution that right when a defendant admits the intent to murder; where there is a question about intent Justice Garman would leave it up to the jury and submit both the intentional-murder and felony-murder counts to it. That approach seems reasonable. A defendant cannot argue he was provoked if he did not intend his response to the provocation.

Justice Garman would have allowed the felony-murder charge to go to the jury in *Pelt*, where the defendant threw his infant son into a dresser, because "[n]o one, other than Pelt, knows whether he threw the infant against the dresser with the intent to kill, with the knowledge that he would likely cause death or grave bodily harm, or 'merely' with the intent to batter the child." *Davis*, 213 Ill. 2d at 497, 821 N.E.2d at 1175 (Garman, J., specially concurring). The majority in *Pelt* refused to allow a felony-murder charge, but the court gave special weight to the fact that the jury had rejected a charge of knowing murder. "Our holding ensures that defendant will not be punished as a murderer where the State failed in proving to the jury that a knowing murder occurred." *Pelt*, 207 Ill. 2d at 442, 800 N.E.2d at 1197. Of course, there was no possibility of a second-degree-murder-provocation or unreasonable-belief-of-justification argument in *Pelt*.

The argument that the State is avoiding its burden of proving intentional or knowing murder is best illustrated where defendant is charged with battery, intentionally causing bodily harm, and that intent is magnified by the felony-murder rule into an intent to kill. To the legislature's credit, it has avoided that problem. Battery is not a predicate offense for felony murder. Rather, felony murder requires an aggravated battery, where the defendant intentionally or knowingly causes great bodily harm or permanent disability or disfigurement. Why should a defendant who intends to beat a victim within an inch of his life avoid a felony-murder charge when the victim dies? The defendant who commits aggravated battery has chosen to engage in risky conduct, even more so than the defendant who has chosen to rob a shopkeeper.

In the present case, defendant did not intend to kill the victim, only to scare his brother. Accordingly, defendant's offense of aggravated discharge of a firearm was not an act inherent in intentional or knowing murder. The fact that defendant did not intend to kill the victim distinguishes this case from *Morgan*, where the defendant did intend to kill his grandmother and accordingly could not be charged with felony murder. As in *Davis*, we are able to conclude that the predicate felony here involved conduct with a felonious purpose other than the conduct that killed the victim. This is not a case like *Pelt*, where the defendant was acquitted of knowing murder. In any event, defendant was allowed to make his provocation argument to the jury.

## C. Other Districts' Analysis

In three separate cases, our First District Appellate Court addressed the issue of aggravated discharge of a firearm constituting a forcible felony for a felony-murder conviction. See *People v. Toney*, 337 Ill. App. 3d 122, 785 N.E.2d 138 (2003); *People v. Ruiz*, 342 Ill. App. 3d 750, 795 N.E.2d 912 (2003); *People v. McGee*, 345 Ill. App. 3d 693, 801 N.E.2d 948 (2003). In all three cases, the First District found the predicate felony, aggravated discharge of a firearm, supported the felony murder. All three cases recognized that *Morgan* merely limited the predicate felonies to those felonies that did not arise from and were not inherent in the murder itself and that the factual context surrounding the murder was key in determining whether the forcible felony could serve as a predicate felony for felony murder. See *Toney*, 337 Ill. App. 3d at 132, 785 N.E.2d at 146-47; *Ruiz*, 342 Ill. App. 3d at 755, 795 N.E.2d at 918; *McGee*, 345 Ill. App. 3d at 698-99, 801 N.E.2d at 953. The rule is designed to prevent the State from using felony murder to prove every first degree murder case.

In *Toney*, two members of a gang saw three members of a rival

gang drive by and began yelling at them. Shots were fired between the two gangs, and a bystander was shot and killed. The jury found the defendant guilty of first degree felony murder of the bystander, attempted murder of the rival gang members, and aggravated discharge of a firearm in connection with shooting at the rival gang members. *Toney*, 337 Ill. App. 3d at 128, 785 N.E.2d at 143. The *Toney* court held:

> "Unlike *Morgan*, where the acts constituting forcible felonies arose from and were inherent in the act of murder itself, here the State's evidence demonstrated that the acts constituting the forcible felony of aggravated discharge of a firearm were not inherent in the act of murder itself but, rather, involved conduct with a felonious purpose other than the killing of [the victim]." *Toney*, 337 Ill. App. 3d at 134, 785 N.E.2d at 148.

■ The facts of both *Ruiz* and *McGee* are similar to the facts in *Toney*. In *Ruiz*, a father holding his three-year-old son was shot in the head and died when he was caught in the cross fire of two rival street gangs. After a jury trial, the defendant was found guilty of first degree murder of the father and aggravated discharge of a firearm concerning the son. The *Ruiz* court found "no error in instructing the jury on felony murder where the predicate offense involved a victim other than the deceased." *Ruiz*, 342 Ill. App. 3d at 756, 795 N.E.2d at 918. The *McGee* case involved a shoot-out between the defendant and rival gang members in which an 18-month-old boy was shot in his stroller. The *McGee* court stated as follows:

> "Unlike *Morgan* and *Pelt*, the cause[-]and[-]effect relationship here between aggravated discharge of a firearm and the killing is *not* muddled. Here, the defendant shooting at [a] rival gang member *** is the conduct that formed the basis of defendant's aggravated[-]discharge[-]of[-]a[-]firearm conviction. The defendant shooting [the victim] is the conduct that formed the basis for murder. Thus, it is not difficult here to conclude that the predicate felony underlying the charge of felony murder involved conduct with a felonious purpose other than the conduct that killed the baby." (Emphasis added.) *McGee*, 345 Ill. App. 3d at 698, 801 N.E.2d at 953.

## D. The Charging Instrument

Defendant argues even if *Morgan* does not ban aggravated discharge of a firearm as a predicate offense and allows for a case-by-case analysis to determine when the felony may be a predicate offense, the language of the charging instrument does not allege an "independent felonious purpose." Defendant argues that the State must include in the charging instrument language charging defendant with intent to commit some felony or charge some other victims or state the

number of shots that were fired. The charging instrument charges that defendant

> "committed the offense of first degree murder, in violation of *** 720 5/9—1(a)(3), in that said defendant, without lawful justification while committing a forceable [sic] felony, aggravated discharge of a firearm, in violation of Illinois Compiled Statutes Chapter 720 Act 5, Section 24—1.2(A)(2), shot into a vehicle occupied by Amanda Mulry and thereby caused the death of Amanda Mulry."

The charge alleges defendant thereby

> "committed the offense of aggravated discharge firearm [sic], in violation of *** 720 5/24—1.2, in that said defendant, knowingly discharged a firearm in the direction of a vehicle he knew to be occupied."

We do not find that the language of the charging instrument is deficient.

Finally, defendant argues the conduct of shooting several bullets "wildly" at the occupied vehicle to "scare off his brother" shows that conduct is more properly reckless discharge of a firearm (720 ILCS 5/24—1.5 (West 1994)) and thus not the basis for felony murder. The jury, however, disagreed and found defendant guilty of aggravated discharge of a firearm. We will not disturb this finding. Therefore, we find *Morgan* does not change the result, and we uphold defendant's first degree murder conviction.

## E. Retroactive Application

Because *Morgan* does not change the result, we need not address the issue of whether the decision would retroactively apply to this case.

## III. CONCLUSION

For the reasons stated, we affirm the conviction.

Affirmed.

TURNER and APPLETON, JJ., concur.