Docket No. 95614–Agenda 1–January 2004.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. TAIWAN M. DAVIS, Appellant.

Opinion filed December 16, 2004.

JUSTICE FITZGERALD delivered the opinion of the court:

On October 1, 1998, defendant Taiwan Davis was charged by indictment with two counts of first degree murder of Richard Skelton. Count I alleged first degree knowing murder (720 ILCS 5/9–1(a)(2) (West 1998)), and count II alleged first degree felony murder predicated on mob action (720 ILCS 5/25–1(a)(1) (West 1998)). At the jury instructions conference, the trial court indicated it would give defendant’s tendered involuntary manslaughter instructions only as an alternative to count I knowing murder. The State then moved to dismiss count I, which the court allowed. As a result, the trial court declined to give involuntary manslaughter instructions. The jury convicted defendant of felony murder.

The appellate court affirmed. 335 Ill. App. 3d 1102. We granted leave to appeal (177 Ill. 2d Rs. 315, 612(b)) to address two issues: (1) whether defendant’s conviction for felony murder was based on a predicate felony inherent in the killing so that it must be vacated under 
People v. Morgan
, 197 Ill. 2d 404 (2001); and (2) whether the trial court committed reversible error by refusing to give involuntary manslaughter instructions. For the following reasons, we affirm the appellate court.

BACKGROUND

Late in the evening of August 10, 1998, Richard Skelton learned that his recently purchased television set was missing. Richard believed his girlfriend and his two sisters had sold it for crack cocaine. Richard’s younger brother, Fred, picked him up at a bar called Wick’s with Richard’s son Jason, Jason’s girlfriend Dawn Herrin, Richard’s daughter Shelly Garrett, and Jill Walter. In two cars, the group drove to the 1100 block of Seventh Street in Alton, Illinois, where they believed the television may have been sold. 

Members of the group exited the cars and began knocking on doors and asking about the television. The group had some familiarity with the area. During their search, Fred met a prior acquaintance, Bruce Stewart. Fred asked Stewart about the television and then asked some men on a porch “if they had heard of any television set being sold in this area for drugs.” Richard also asked individuals about the television. Dawn testified that Jason was trying to get his father to leave before anything started, but Richard refused, saying that he was not going to leave until he got his television back. The pair continued across the street to Timothy Lee’s duplex, where Lee and several friends were sitting on the porch.

An argument began, and Lee told them to get off his property. Fred testified that, “they told us that we were in the wrong neighborhood to even be asking questions.” Fred heard a door slam across the street, turned, and saw “several guys coming from behind [him].” Fred stated, “It was a pretty scary situation at that time when they started coming at me.” According to Fred, defendant was not part of either group; however, Shelly was able to identify defendant at that time. Fred turned back around and was “split in the head with a club” and “knocked out” for 20 to 30 seconds. Shelly testified that she was also attacked by four or five persons.

When Fred woke up he saw “ten or better” men beating Richard. Shelly stated that it was 20 men. “Every one of them” was beating Richard. They kicked Richard in the head, face, and ribs for about five minutes. “He didn’t have a chance to fight back,” stated Fred. According to Fred, “They was saying slurs, you know, shouldn’t have been in this area, and they’d kick him. They was cussing and yelling and hollering like kind of rejoicing that he got whopped like he did.” Shelly described the situation by stating, “They was actually pulling each other out of the way and they was, you know laughing, kick him, you know hitting him, kick his ass, and so, you know, everything was, I was trying to get to him. I was yelling that’s my father.” Jason testified similarly, stating, “Most all the guys that I could see that was there was participating in it like it was, you know, fun or something, a game to them.” The crowd “was cheering them on and rooting them on and trying to get in there to help their friends basically kill him.” None of the group around Richard attempted to stop the incident, according to Jason.

Shelly identified defendant hitting Richard more than six times with a stick. Fred saw defendant with a stick in his hand, and observed defendant throw the stick down as he fled. Jason testified that he saw defendant in the group around Richard, but did not see anyone with a stick. Jason did not know if defendant hit Richard because Jason was trying to get his girlfriend out of the fray. Dawn Herrin did not see the crowd of 15 or 20 people hit Richard, but did see defendant holding something as he was crossing the street to join the crowd. Jill testified that she was a block away and saw a fight with Richard in the center, but could not identify anyone specifically in the beating. Each of the witnesses admitted that they omitted reference to defendant in their initial reports to police, but, according to the witnesses, such omissions were because they were not asked or they were still emotional from the incident.

As the police were arriving, the group beating Richard fled. Alton police officer Michael Bazzell was called to the scene of a fight “around midnight.” He observed a “white male laying partially in the roadway.” Richard was not conscious and did not have a pulse. Bazell unsuccessfully performed cardiopulmonary resuscitation. He observed “the majority of his face was covered with blood.” The victim arrived by ambulance at the Alton Memorial Hospital emergency room in cardiac arrest. According to a nurse, Richard had abrasions on his forehead and bruises to both sides of his face. After attempts to revive Richard failed, Richard was pronounced dead at 12:50 a.m. on August 11, 1998.

Dr. Raj Nanduri performed a postmortem examination on the victim. Dr. Nanduri testified to bruises, abrasions, and scratches about Richard’s face. He stated there was a “massive hemorrhage underneath the scalp in the temple region” and that the wounds were consistent with blunt force injury to the head. Dr. Nanduri did not observe fractures of the skull or intracranial hemorrhage. Richard’s chest exhibited a wound consistent with blunt-force injuries and the left fifth and sixth ribs were broken. There were injuries to the back of the neck consistent with a beating of the victim. Dr. Nanduri additionally stated that Richard had very advanced coronary atherosclerosis and a 0.183 blood-alcohol level. He determined the cause of death to be “cardiac arrythmia precipitated by blunt trauma to head and chest in patient with advanced atherosclerotic cardiovascular disease” with “acute ethanol intoxication” being a significant contributing condition of death.

Dr. Nanduri testified it was possible that a stick could have caused some of Richard’s blunt-force injuries. However, he could not state whether the blunt-force injuries were actually caused by a stick. Dr. Nanduri explained, “[A] stick can cause a pattern which is consistent with the object. And if you have that, then you can for sure take the dimensions and measurements of the stick and the injuries on the body and you would be able to say that, in all probability this weapon or similar object would have caused the particular injury.” He did not find that pattern in this case. Dr. Nanduri would expect that if someone hit a victim six times directly with a stick, then a pattern would be observable on the victim.

Several police officers canvassed the area soon after the incident. Officer Anthony Ventimiglia, the crime scene technician, arrived to the scene after Richard had been removed. The beating occurred around a Ford Escort parked on the south side of 7th Street. A light blue broom stick was found just to the west of the Ford Escort. Ventimiglia identified the broom stick in court, which was approximately three feet in length and one-half inch in diameter. Photographs also depicted Richard’s eyeglass lens, a wrist watch, medical supplies, and “some blood that was in the roadway” near the Ford Escort. Photographs depicted numerous severe bruises and lacerations about Richard’s head. Ventimiglia did not notice any blood on the stick.

Alton detective Scott Golike testified that he first saw defendant in a duplex belonging to Lisa Haynes at 1118 East 7th Street at approximately 2 a.m., August 11, 1998. Golike testified that defendant stated that he had been inside and did not see the incident. In a witness statement at 2:23 a.m. on August 11, defendant stated that he heard a commotion outside, so he looked outside through the window. He saw Timothy Lee arguing with a bunch of people about a television set, but he never saw a fight because his friend’s mom told them to stay out of it.

Golike interviewed defendant again several hours later at the police station. After being advised of his constitutional rights, defendant altered his story. According to Golike, defendant stated, with a tear in his eye, that he had, in fact, beaten the victim three or four times with a stick. In his written statement, signed at 7:45 a.m. on August 11, defendant stated that he previously lied because he was scared. He stated that he had been sitting on Lisa Hayne’s front porch with friends when the two cars pulled up. After the argument started, he saw a man he knew as T.A. hit Fred on the head. Fred fell to the ground. At this point, defendant ran across the street to the fight, carrying a broomstick that he already had in his hand. He stated, “I don’t know why, but when this fight started, I got excited and wanted to get in it. I don’t know why I did it because this dude hadn’t done nothing to me. But I ran across the street with a bunch of other people to help beat him up.” Defendant’s statement continued,

“I think I hit him twice on his head, but I didn’t really mean to hit him there. I meant to hit him on his body, but he kept moving around and it was hard to hit him right where I wanted to. I’m sure I hit him only three or four times and one or two of those times were just on his body somewhere. After I hit him the last time, I threw the stick down on top of him and took off running back to Lisa’s house. This older guy was hurt pretty bad and this was when I realized that I done something wrong and I felt bad about it. *** The last time I saw the white dude, he was still laying in the street and everybody was running away from him. I heard later that he died. I’ll admit that I hit him in the head a couple times, but I did not mean for the guy to die.”

Defendant was 17 years old at the time of his arrest and was 5 feet 8 inches tall and weighed 160 pounds. At trial, defendant stated that he twice swung the stick into the crowd, but that he did not hit Richard. He hit Bruce Stewart instead. Defendant denied telling the police otherwise. At trial, he stated that when he swung the stick at Richard, “I know he would probably get hurt, but I didn’t think the man would die.” Defendant testified that he was not part of any mob, but he also stated, “By me being there, I’m pretty sure I was involved.”

Defendant called Kathryn Kessler and Lisa Haynes as witnesses at trial. Kessler stated that she saw the incident, but did not see anyone with a stick, but admitted she had told police after the incident that she had. Haynes testified that defendant was in her house during the entire incident, but admitted she reported to the police after the incident that “Taiwan Davis then ran from the altercation and went inside of Haynes residence.”

On August 12, 1998, the State information charged defendant by information with knowing first degree murder (720 ILCS 5/9–1(a)(2) (West 1998)). On September 3, 1998, the grand jury returned a three-count indictment against defendant for knowing first degree murder (720 ILCS 5/9–1(a)(2) (West 1998)), armed violence (720 ILCS 5/33A–2 (West 1998)), and mob action (720 ILCS 5/25–1(a)(1) (West 1998)). This indictment was superceded by the October 1, 1998, two-count amended indictment noted above.

After the evidence described above was adduced before the jury, the trial court denied defendant’s motion for acquittal on both the knowing-murder and felony-murder counts.

At the instructions conference, defense counsel asked for an instruction on involuntary manslaughter, stating, “If they believe Mr. Davis, if they believe what he told them, they can find involuntary manslaughter.” Defense counsel also argued that the evidence demonstrated that defendant was not acting together with the mob. The State responded that because there was no evidence of recklessness, defendant was not entitled to an involuntary manslaughter instruction. The State also raised the possibility of inconsistent verdicts. Defense counsel replied, “Well, I mean we want a just verdict and we think that the jury can reach a just verdict. And we think, in fact, the just verdict would be involuntary manslaughter.” Relying on 
People v. DiVincenzo
, 183 Ill. 2d 239 (1998), the court allowed the involuntary manslaughter instruction on count I (knowing first degree murder). However, the court did not allow the instruction on count II because involuntary manslaughter was not a lesser-included offense of felony murder.

The State sought to dismiss count I and proceed only on count II, felony murder. Over the defense objection, the trial judge granted the motion to dismiss count I.

The jury was instructed, 
inter alia
, that “a person commits the offense of mob action involving violent infliction of injury when he, acting together with one or more persons and without authority of law, knowingly disturbs the public peace by the use of force or violence; and one of the participants in the mob action violently inflicts injury to the person of another.” The jury deliberated and found defendant guilty of felony murder premised on mob action. The trial court denied defendant’s posttrial motion. On April 30, 1999, the trial court sentenced defendant to 20 years’ imprisonment.

On appeal, after reviewing the evidence, the appellate court concluded that “[t]he trial court’s refusal to allow involuntary manslaughter instructions was a proper use of its discretion where the evidence established that defendant did not act recklessly.” 335 Ill. App. 3d at 1108-09. We granted defendant’s petition for leave to appeal. 177 Ill. 2d Rs. 315, 612(b).

ANALYSIS

Defendant argues: (1) his conviction for felony murder must be vacated under the reasoning set forth in our decision in 
People v. Morgan
, 197 Ill. 2d 404 (2001); and (2) the trial court committed reversible error by refusing to give the involuntary manslaughter instruction.

Felony Murder

The State preliminarily maintains that the first argument is waived because it was not included in defendant’s petition for leave to appeal nor was it presented to the appellate court. We note that this court released the 
Morgan
 decision after this case was argued in the appellate court and before that court issued its opinion. Defense counsel acknowledges his failure to raise the 
Morgan
 issue in a supplemental brief to the appellate court or in the petition for leave to appeal. Under Supreme Court Rules 341(e)(7) and 315(g), a party is required to raise its arguments and provide citation to legal authority in its appellate brief and in its petition for leave to appeal to avoid waiver. 177 Ill. 2d R. 315(g); 188 Ill. 2d R. 341(e)(7); see also 
People v. Patterson
, 154 Ill. 2d 414, 454-55 (1992). Waiver limits the parties’ ability to raise an issue, not this court’s ability to consider an issue. 
People v. Kliner
, 185 Ill. 2d 81, 127 (1998). We choose to address the merits.

The Criminal Code defines the offense of felony murder as:

“(a) A person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause death:

* * *

(3) he is attempting or committing a forcible felony other than second degree murder.” 720 ILCS 5/9–1(a)(3) (West 2002).

The Code defines the term “forcible felony” to encompass several enumerated felonies, including “aggravated battery resulting in great bodily harm or permanent disability or disfigurement” as well as “any other felony which involves the use or threat of physical force or violence against any individual.” 720 ILCS 5/2–8 (West 2002). The Code section at issue here defines “mob action” as consisting of “[t]he use of force or violence disturbing the public peace by 2 or more persons acting together and without authority of law.” 720 ILCS 5/25–1(a)(1) (West 2002). Defendant makes no argument that the felony of mob action is not a “forcible felony” within the felony-murder statute.

The lack of an intent to kill for felony murder distinguishes it from the other forms of first degree murder, which require the State to prove either an intentional killing (720 ILCS 5/9–1(a)(1) (West 2002)) or a knowing killing (720 ILCS 5/9–1(a)(2) (West 2002)). Given this fact, we have acknowledged a concern that the State will effectively eliminate second degree murder and will avoid the burden of proving an intentional or knowing killing in first degree murder cases by often charging felony murder because certain predicate felonies tend to accompany all murders. 
Morgan
, 197 Ill. 2d at 447; 
People v. Pelt
, 207 Ill. 2d 434, 441 (2003). This problem is particularly prevalent in cases where the same evidence is used to prove the underlying felony as to prove the killing. See, 
e.g.
, 
Morgan
, 197 Ill. 2d 404 (predicate felonies of aggravated battery and aggravated discharge arose from the shooting which also caused the killing); 
Pelt
, 207 Ill. 2d 434 (predicate felony of aggravated battery of a child arose from the throwing of an infant which also caused the killing). In these cases, it is difficult to conclude that the predicate felony underlying the charge of felony murder involved a felonious purpose other than the killing of the victim. 
Pelt
, 207 Ill. 2d at 442.

Thus, where the evidence of the conduct underlying the felony and the killing is the same, the felony-murder statute may absolve the State of its duty to prove to the fact finder that the defendant possessed either an intent to kill or do great bodily harm or knowledge of a strong probability of death or great bodily harm, thereby allowing the State to take a shortcut to a murder conviction. To address this problem, we held in 
Morgan
 that where “the acts constituting forcible felonies arise from and are inherent in the act of murder itself, those acts cannot serve as predicate felonies for a charge of felony murder.” 
Morgan
, 197 Ill. 2d at 447; see also 
Pelt
, 207 Ill. 2d at 441. This holding ensured that in this type of case, the prosecution must prove an intentional or knowing killing to the fact finder in order to punish the defendant like a murderer. 
Pelt
, 207 Ill. 2d at 442.

We review the facts of 
Morgan 
and 
Pelt 
to illustrate this problem. In 
Morgan
, the 14-year-old defendant was indicted on eight counts for killing his grandparents, Lila and Keith Cearlock. Following an argument between the defendant and Keith about the defendant receiving detention in school, Keith administered corporal punishment on the defendant with a razor strap and also attempted to punch him. The defendant retrieved Keith’s gun shortly thereafter, intending to use it to kill himself in the bathroom. Instead, the defendant fired the gun at a bottle on the bathtub. The defendant exited the bathroom to find Lila screaming. Keith had threatened in the past to kill him, so he feared for his life when he saw how angry Keith had become. The defendant shot Keith as he approached to prevent Keith from reaching him. He then shot Lila in the back as she tried to flee the house. 
Morgan
, 197 Ill. 2d at 411-12. Regarding each victim, the defendant was charged with first degree intentional murder (720 ILCS 5/9–1(a)(1) (West 1994)), first degree knowing murder (720 ILCS 5/9–1(a)(2) (West 1994)), first degree felony murder (720 ILCS 5/9–1(a)(3)) (West 1994)) predicated on aggravated battery (720 ILCS 5/12–4(a) (West 1994)), and first degree felony murder predicated on aggravated discharge of a firearm (720 ILCS 5/24–1.2(a)(2) (West 1994)). 
Morgan
, 197 Ill. 2d at 444. The defendant was found guilty of first degree murder of Lila and second degree murder of Keith.

The defendant argued on appeal that he could not be found guilty of first degree felony murder of Lila because the charged predicate felonies were not independent of the killing. 
Morgan
, 197 Ill. 2d at 444-45. We agreed and held that the trial court erred in instructing the jury on felony murder. 
Morgan
, 197 Ill. 2d at 447-48. We noted that defendants cannot be convicted of felony murder when the predicate felonies “arose from and were inherent in the murders.” 
Morgan
, 197 Ill. 2d at 447-48.

In 
People v. Pelt
, the defendant was found guilty of aggravated battery of a child, his infant son, and first degree felony murder predicated on aggravated battery of a child. The evidence showed that the defendant threw the infant into a dresser causing injuries which led to the infant’s death. We held that aggravated battery improperly served as the predicate for felony murder. 
Pelt
, 207 Ill. 2d at 442-43. Following the same analysis we created in 
Morgan
, we focused on whether the “defendant’s aggravated battery was an act that was inherent in, and arose out of, the killing of the infant.” 
Pelt
, 207 Ill. 2d at 442. We found that the act of throwing the infant formed the basis of the aggravated battery conviction and that it was also the same act underlying the killing. 
Pelt
, 207 Ill. 2d at 442-43. We could not conclude that the predicate felony underlying the charge of felony murder involved conduct with a felonious purpose other than the conduct which killed the infant. 
Pelt
, 207 Ill. 2d at 442-43. This case demonstrated our apprehension that to permit such a felony-murder charge of this nature would “ ‘eliminate the need for the State to prove an intentional or knowing killing in most murder cases.’ ” 
Morgan
, 197 Ill. 2d at 447, quoting 
People v. Morgan
, 307 Ill. App. 3d 707, 712 (1999). It was improper to find the defendant to be a first degree murderer when the predicate felony was inherent in the killing and when the State had failed to prove another form of first degree murder to the jury. 
Pelt
, 207 Ill. 2d at 442.

With these precedents in mind, we turn to the facts of the instant case. The evidence at trial demonstrates defendant’s conduct was not an act that was inherent in, and arose out of, the killing of Richard Skelton. Simply stated, the same evidence was not used to prove both the predicate felony, mob action, and the murder. The following evidence was adduced at trial. Defendant joined the crowd after the argument began. According to defendant’s statement, he hit Richard twice in the head, and once or twice on the body. Defendant testified that he swung twice at Richard, but did not hit him. The only person he succeeded in hitting, according to defendant’s testimony, was Bruce Stewart. The testimony of Richard’s family and friends–save Shelly Garrett, who testified that defendant struck Richard six or more times–was unclear as to whether defendant actually hit Richard. It is undisputed that many of the blows Richard received were from the 10 to 20 other assailants. The jury found that defendant acted together with one or more persons without authority of law; knowingly disturbed the public peace by the use of force or violence; and one of the participants in the mob action violently inflicted injury to Richard. In essence, to convict defendant of mob action, it was not necessary to prove that defendant struck Richard, much less performed the act that caused the killing. Unlike 
Morgan 
and 
Pelt
, we are able to conclude that the predicate felony underlying the charge of felony murder involved conduct with a felonious purpose other than the conduct which killed Richard. Therefore, under the facts of the instant case, mob action was a proper predicate felony for felony murder. Our holding in 
Morgan
 does not preclude defendant’s felony-murder conviction.

 We further note that this outcome is consistent with our holding in 
People v. Viser
, 62 Ill. 2d 568 (1975), a case preceding 
Morgan
. In 
Viser
, there was an altercation among approximately seven men and two off-duty law enforcement officers, Smith and Jordan. Although guns were present, injuries to the officers were inflicted through punching and kicking rather than gunshots. Jordan died two weeks later due to severe abdominal injuries he received during the confrontation. 
Viser
, 62 Ill. 2d at 573-74. As here, it was not obvious which of the defendants caused the fatal blow to the victim, who died two weeks later “of pancreatitis caused by severe abdominal injuries he received” during the beating. 
Viser
, 62 Ill. 2d at 576. Therefore, the individual conduct of each defendant in beating the victim, which formed the basis of the individual forcible felonies of aggravated battery for each defendant, did not arise from nor was inherent in the killing itself.

Involuntary Manslaughter Jury Instructions

We initially note that defendant’s argument on this issue is less than clear. What is consistent throughout defendant’s arguments before the trial court, appellate court, and before this court is a general argument that the jury was entitled to determine if the defendant acted recklessly, in the form of an involuntary manslaughter instruction. Therefore, defendant argues that the trial court erred by refusing that instruction. This court reviews a court’s decision to decline to give an instruction under the abuse of discretion standard. 
People v. DiVincenzo
, 183 Ill. 2d 239, 249 (1998).

We have adopted and applied the charging instrument approach to determine if one offense is a lesser-included offense of a charged offense so that jury instructions can be given for the lesser-included offense. 
People v. Novak
, 163 Ill. 2d 93, 106-14 (1994); 
People v. Hamilton
, 179 Ill. 2d 319, 324 (1997). Under this approach, we analyze whether: (1) the charging instrument includes “ ‘a broad foundation or main outline’ ” of the lesser-included offense so that it can be considered a lesser-included offense; and (2) the evidence at trial rationally could support a conviction for the lesser-included offense. 
People v. Ceja
, 204 Ill. 2d 332, 360-61 (2003), quoting 
People v. Baldwin
, 199 Ill. 2d 1, 11 (2002).

Under the first step, we have traditionally looked to the indictment or information when conducting this analysis. 
People v. Ceja
, 204 Ill. 2d 332, 361 (2003); 
People v. Hamilton
, 179 Ill. 2d 319, 324-25 (1997); 
People v. Jones
, 175 Ill. 2d 126, 135 (1997); 
People v. Novak
, 163 Ill. 2d 93, 115-16 (1994); 
People v. Landwer
, 166 Ill. 2d 475, 491-92 (1995). The trial court allowed the State’s motion to dismiss count I of the indictment, leaving only count II, the felony-murder count.

Count II of the amended indictment in this case provided:

“FIRST DEGREE (FELONY) MURDER–in that said defendant, without lawful justification, while committing Mob Action, a felony which involved the use or threat of physical force or violence against an individual, in violation of 720 ILCS 5/25–1(a)(1), beat and kicked Richard L. Skelton, and thereby caused the death of Richard L. Skelton, all in violation of 720 ILCS 5/9–1(a)(3), and against the peace and dignity of the People of the State of Illinois.”

Count II does not specify any mental state as to the killing. As discussed above, the statutory definition of felony murder does not indicate a mental state for the killing (720 ILCS 5/9–1(a)(3) (West 2002)), and we have confirmed that the offense of felony murder does not include an intent to kill (
Viser
, 62 Ill. 2d at 581). The Criminal Code describes involuntary manslaughter as follows:

“A person who unintentionally kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly ***.” 720 ILCS 5/9–3(a) (West 1998).

Accordingly, this statutory definition clearly specifies that a perpetrator must have a reckless mental state to be guilty of involuntary manslaughter.

A lesser-included offense is an offense proven by lesser facts or a lesser mental state, or both, than the charged offense. 
Hamilton
, 179 Ill. 2d at 324; 720 ILCS 5/2–9 (West 2002). Therefore, for involuntary manslaughter to be a lesser-included offense of felony murder, the felony-murder count must include a more culpable or equally culpable mental state as involuntary manslaughter. Felony murder as described in defendant’s indictment does not include a culpable mental state as to the killing while the offense of involuntary manslaughter requires a reckless mental state. Thus, the charging instrument does not include a broad outline of involuntary manslaughter. Involuntary manslaughter is not a lesser-included offense of felony murder in this case. See 
People v. McCarroll
, 168 Ill. App. 3d 1020, 1023 (1988); 
People v. Ellis
, 93 Ill. App. 3d 981, 984 (1981); 
People v. Weathers
, 18 Ill. App. 3d 338, 345-46 (1974); but see 
People v. Golden
, 29 Ill. App. 3d 502, 507 (1975). In light of this conclusion, we need not reach the second step of the charging instrument approach, the evaluation of whether the evidence at trial could rationally support a conviction for involuntary manslaughter. 
Ceja
, 204 Ill. 2d at 361.

In the alternative, defendant argues that even if involuntary manslaughter is not a lesser-included offense of felony murder in this case, evidence at trial supports the defense theory that defendant acted recklessly so that defendant could have been found guilty of the less serious, though not included, offense of involuntary manslaughter. As a result, the involuntary manslaughter instructions should have been given.

A defendant is entitled to have the jury be instructed on defense theories about which there is at least “slight” evidence. 
People v. Everette
, 141 Ill. 2d 147, 156 (1990). It is permissible for such instructions to address alternative theories that are inconsistent so long as each has support in the trial record. 
Everette
, 141 Ill. 2d at 156. Defense theories typically provide affirmative defenses to or mitigation of the charged offenses. See, 
e.g.
, 
People v. Spears
, 112 Ill. 2d 396, 402 (1986) (the defendant asserted theory that shootings were unintentional, so he tendered jury instructions on reckless conduct as a lesser-included offense of armed violence); 
Everette
, 141 Ill. 2d at 150 (the defendant tendered self-defense instructions on homicide case). As we recently explained, “[t]he controlling principles are quite settled. A defendant generally may not be convicted of an offense for which the defendant has not been charged. However, in an appropriate case, the defendant is entitled to have the jury instructed on less serious offenses that are included in the charged offense.” 
Ceja
, 204 Ill. 2d at 359.

In other words, while a defendant may assert theories to try to mitigate or rebut responsibility for charged offenses, the defendant cannot argue responsibility for less serious, but unrelated, offenses which were not charged. Defendant objects that this case demonstrates how the prosecutor can use this principle to preclude the giving of an involuntary manslaughter instruction by dismissing a knowing or intentional first-degree murder charge and proceeding on only a felony-murder charge. We have already explained why this objection is unpersuasive: “[T]he State’s Attorney is vested with exclusive discretion in the initiation and management of a criminal prosecution. That discretion includes the choice of which charges shall be brought. A criminal does not have the right to choose his or her prosecution or punishment.” 
Ceja
, 204 Ill. 2d at 362; see also 
People v. Novak
, 163 Ill. 2d 93, 113 (1994).

The United States Supreme Court has taken the same position. In 
Hopkins v. Reeves
, 524 U.S. 88, 141 L. Ed. 2d 76, 118 S. Ct. 1895 (1998), a defendant, indicted on two counts of first degree felony murder, requested jury instructions on second degree murder and manslaughter. The trial court refused to give the instructions because they are not lesser-included offenses of felony murder under Nebraska law. The Nebraska Court of Appeals held that the instruction should have been given. The Supreme Court reversed the Court of Appeals, explaining:

“Almost all States *** provide instructions only on those offenses that have been deemed to constitute lesser included offenses of the charged crime. [Citation.] We have never suggested that the Constitution requires anything more. The Court of Appeals in this case, however, required *** that an instruction be given on some 
other
 offense *** when no lesser included offense exists. Such a requirement is not only unprecedented, but also unworkable. Under such a scheme, there would be no basis for determining the offenses for which instructions are warranted. The Court of Appeals apparently would recognize a constitutional right to an instruction on any offense that bears a resemblance to the charged crime and is supported by the evidence. Such an affirmative obligation is unquestionably a great [ ]limitation on a State’s prerogative to structure its criminal law ***.” (Emphasis in original.) 
Hopkins
, 524 U.S. at 96-97, 141 L. Ed. 2d at 85, 118 S. Ct. at 1901.

In light of 
Ceja
 and 
Hopkins
, we hold that a trial court need not allow a defendant’s request to have the jury instructed on offenses that are less serious, but not included, offenses to those offenses for which he or she was charged regardless of whether the evidence at trial could support the less serious offense. We note defendant makes no argument that the trial court erred in dismissing count I of the indictment. Therefore, the trial court properly refused to give defendant’s tendered involuntary manslaughter instructions on the remaining count of the indictment.

CONCLUSION

Defendant’s felony-murder conviction was not improper under 
Morgan
 because the predicate felony of mob action was not inherent in the killing of Richard Skelton. In addition, the trial court properly refused to give defendant’s tendered involuntary manslaughter instructions because involuntary manslaughter is not a lesser-included offense of felony murder in this case and defendant is not entitled to receive instructions on less serious offenses unless they are included offenses.

The judgment of the appellate court is affirmed.

Affirmed
.

JUSTICE KARMEIER took no part in the consideration or decision of this case.

JUSTICE GARMAN, specially concurring:

Defendant argues that although he committed the intentional felony of mob action, his conduct with respect to the target of the mob action was merely reckless. Thus, he contends, if his actions caused or contributed to the death of Richard Skelton, he is guilty of involuntary manslaughter (720 ILCS 5/9–3(a) (West 1998)), not first degree felony murder. 

However, under our felony-murder statute, a defendant is properly convicted of felony murder if, while “performing the acts which cause[d] the death” of a person, he was “attempting or committing a forcible felony other than second degree murder.” 720 ILCS 5/9–1(a)(3) (West 1998). The felony with which defendant was charged, mob action (720 ILCS 5/25–1(a)(1) (West 1998)), is not among those crimes enumerated in the provision defining forcible felonies (720 ILCS 5/2–8 (West 1998)). However, the term “forcible felony” includes not only those listed, but also “any other felony which involves the use or threat of physical force or violence against any individual.” (720 ILCS 5/2–8 (West 1998)). Mob action, under subsection (a)(1), consists of the “use of force or violence disturbing the public peace by 2 or more persons acting together and without authority of law.” 720 ILCS 5/25–1(a)(1) (West 1998). Thus, if the mob action was directed at an individual and caused his death, a charge of felony murder may lie. See also 
People v. Belk
, 203 Ill. 2d 187, 193 (2003) (even a nonviolent felony may serve as the predicate felony for felony murder if, under the facts of the case, it was committed in a manner that involved the use or threat of physical force or violence against an individual).

I, therefore, concur with the court’s conclusion that, under the facts of this case, defendant was properly convicted of felony murder. He committed mob action as defined in section 25–1(a)(1) of the Criminal Code, and the physical force and violence of the mob action was directed at a single individual who died as a result of the injuries inflicted by members of the mob. 

The present case marks the third time in two years in which this court has granted a petition for leave to appeal to determine whether a particular felony was a proper basis for a conviction of felony murder. See 
People v. Pelt
, 207 Ill. 2d 434 (2003); 
Belk
, 203 Ill. 2d 187. The law on this question was well settled for many years (see 
People v. Viser
, 62 Ill. 2d 568 (1975)), with only the occasional unusual factual circumstance requiring this court’s guidance (see 
People v. Lowery
, 178 Ill. 2d 462 (1997)). With the decision in 
People v. Morgan
, 197 Ill. 2d 404 (2001), however, well-settled law seems to have become unsettled, resulting in the frequent need to revisit the question. Although I agree with the holding in the present case, I write separately to explore how this confusion has arisen and how it might be resolved.

Courts and scholars have identified at least two significant concerns with the unfettered application of the felony-murder rule. See, 
e.g.
, R. Gerber, 
The Felony Murder Rule: Conundrum Without Principle
, 31 Ariz. St. L.J. 763 (1999). First, “absent some limitations on the felonies which can invoke the rule, even nondangerous felonies in the pursuit of which a defendant cannot reasonably be thought to have manifested a man-endangering state of mind, can turn an accidental death into felony murder.” 
Baker v. State
, 236 Ga. 754, 755, 225 S.E.2d 269, 270 (1976). This has been called the “nondangerous felony problem.” 
Baker
, 236 Ga. at 755, 225 S.E.2d at 270. 
In Illinois, the nondangerous felony problem has been addressed by the legislature, which has defined felony murder to include only those deaths that occur as a result of the commission or the attempt to commit a forcible felony (720 ILCS 5/9–1(a)(3) (West 1998)), and has provided a clear definition of that term (720 ILCS 5/2–8 (West 1998)).

The second problem arises when “the homicide grows out of an initial aggressive act which is itself a felony.” In such cases, the State can “bootstrap practically all killings with dangerous weapons into murder simply by showing that the assault out of which the death arose was a felony.” 
Baker
, 236 Ga. at 755-56, 225 S.E.2d at 271. This is the “merger problem.” 
Baker
, 236 Ga. at 756, 225 S.E.2d at 271. The concern, of course, is that unless there is some limitation on felony murder, every death caused by conduct that could be described as assault would be first degree murder, and a defendant’s ability to argue that he is guilty of a lesser offense, such as second degree murder or involuntary manslaughter, would effectively be eliminated. Such was the concern in 
Morgan
. Some jurisdictions have adopted rules, variously described as the “merger doctrine,” the “same-act doctrine,” or the “collateral-felony doctrine,” in response to the merger problem. Illinois courts continue to grapple with it.

Merger Doctrine

The merger doctrine is a judicially created limitation on the felony-murder rule that addresses this potential for abuse. Under the merger doctrine, the felony-murder rule cannot be applied if the underlying felony is an offense that is an “integral part” or is “included in fact” in the homicide. See, 
e.g.
, 
People v. Ireland
, 70 Cal. 2d 522, 539, 450 P.2d 580, 590, 75 Cal. Rptr. 188, 198 (1969). In jurisdictions that have adopted the merger doctrine, the act of personal violence that causes the death of the victim is deemed insufficiently independent of the death to constitute a separate felony. It merges with the homicide. Thus, the defendant may be convicted of some form of homicide, but not of felony murder. See W. LaFave & A. Scott, Criminal Law §7.5, at 638 (2d ed. 1986). 

As a result, some jurisdictions hold that a felonious assault can never serve as the basis of a charge of felony murder. For example, in 
Barnett v. State
, 783 So. 2d 927, 930 (Ala. Crim. App. 2000), the court held that because the felony-murder statute applies not only to enumerated crimes but also to any other felony “clearly dangerous to human life,” even a killing that would otherwise constitute manslaughter could be charged as felony murder. To avoid an absurd reading of the statute, the court concluded, a felonious assault that results in the victim’s death merges with the homicide and cannot serve as the underlying felony for a charge of felony murder. 
Barnett
, 783 So. 2d at 930. See also 
State v. Essman
, 98 Ariz. 228, 235, 403 P.2d 540, 545 (1965) (defendant who shot and killed his wife under circumstances that may have been accidental or may have been deliberate may not be convicted of felony murder based on assault with a deadly weapon because the “acts of assault merge into the resultant homicide, and may not be deemed a separate and independent offense which could support a conviction for felony murder”).

Other jurisdictions have rejected the merger doctrine entirely. The Supreme Court of Minnesota has repeatedly rejected the suggestion that it should adopt the merger doctrine. See 
State v. Loebach
, 310 N.W.2d 58 (Minn. 1981); 
State v. Jackson
, 346 N.W.2d 634 (Minn. 1984); 
State v. Abbott
, 356 N.W.2d 677 (Minn. 1984). The court concluded that the state legislature was presumably aware of the doctrine and chose not to adopt it when it amended the murder statute in 1981, reclassifying felony murder as second degree rather than third degree murder. 
Jackson
, 346 N.W.2d at 636. 

The Supreme Court of South Dakota rejected the merger rule in a case involving a defendant who killed his four-month-old daughter by intentionally dropping her on the floor. 
State v. O’Blasney
, 297 N.W.2d 797 (S.D. 1980). Citing this court’s opinion in 
Viser
, the South Dakota court observed that the “decision to adopt or reject the merger doctrine has resulted largely from an analysis of that jurisdiction’s statutes.” 
O’Blasney
, 297 N.W.2d at 799. Courts that have adopted the merger doctrine have done so because, absent such a limitation, “all homicides not justified or excused would become first-degree murder under their statutes.” 
O’Blasney
, 297 N.W.2d at 799. Because adoption of the merger doctrine was not necessary to “prevent the nullification of other provisions” of the state’s homicide statutes, the court concluded that adoption of the doctrine “would represent an exercise of judicial oversight that would have no warrant.” 
O’Blasney
, 297 N.W.2d at 800. 

The Supreme Court of Tennessee has noted that “the merger doctrine has not been widely accepted.” 
State v. Godsey
, 60 S.W.3d 759, 774 (Tenn. 2001). The court agreed with the State’s contention that “the merger doctrine is a rule of statutory construction” that applies “only when the legislature has not enumerated the felonies that will support a conviction for felony murder.” 
Godsey
, 60 S.W.3d at 774. Because aggravated child abuse is one of the enumerated predicate felonies under Tennessee law, Godsey’s act of squeezing the seven-month-old victim’s head between his biceps and forearm did not merge into the homicide, even though it was the same assaultive act that caused the infant’s death. 
Godsey
, 60 S.W.3d at 775. 

The Supreme Court of Georgia also relied on the intent of the legislature and the construction of the state’s various homicide statutes when it concluded that it was “not free to adopt the merger doctrine” urged by the appellant in 
Baker
. 
Baker
, 236 Ga. at 757, 225 S.E.2d at 271-72. 

Still other jurisdictions adopted the merger doctrine and then abandoned it. In 
State v. Williams
, 24 S.W.3d 101, 117 (Mo. App. 1993), the court concluded that the state legislature abrogated the merger doctrine by excluding only murder and manslaughter as predicate felonies. See also 
State v. Bouser
, 17 S.W.3d 130, 140 (Mo. App. 1999) (holding that if legislature intended merger doctrine to limit felony murder it could easily have excluded felonies other than murder or manslaughter from the reach of the felony-murder statute). 
 A century-old case from New York provides an example of the merger doctrine. In 
People v. Huther
, 184 N.Y. 237, 77 N.E. 6 (1906), the defendant shot and killed a police officer while attempting to evade arrest. The court held that he could not be convicted of felony murder based on the felony of assaulting a police officer to prevent arrest because the underlying felony was a part of and, therefore, merged into the homicide. 
Huther
, 184 N.Y. at 288, 77 N.E. at 8. The court held that when “the gist of the offense is the assault and when it is by violence inflicting an injury to the person so assaulted, resulting in death, the act becomes a constituent part of the homicide and is merged in the charge therefor.” (Emphasis omitted.) 
Huther
, 184 N.Y. at 244, 77 N.E. at 8-9. It does not follow, however, that “the act which caused the death must be a different one from that done in the commission of the collateral felony.” If the act causing the death is “committed with a collateral and independent felonious design it is sufficient” to serve as the underlying felony for a charge of felony murder. 
Huther
, 184 N.Y. at 244, 77 N.E. at 9. 

In 1973, New York’s highest court explained that it had developed the merger doctrine “to remedy a fundamental defect in the old felony-murder statute.” 
People v. Miller
, 32 N.Y.2d 157, 159, 297 N.E.2d 85, 87, 344 N.Y.S.2d 342, 345 (1973). However, the court noted, that defect was remedied in 1965 when the legislature revised the statute to include a list of specified felonies that may form the basis for felony murder. 
Miller
, 32 N.Y.2d at 160, 297 N.E.2d at 87, 344 N.Y.S.2d at 345; see also 
Saenz v. State
, 976 S.W.2d 314, 317 (Tex. Ct. App. 1998) (judicially created merger doctrine is trumped by “express language of the current penal code,” which exempts only manslaughter as an underlying felony under the felony-murder rule).

It is noteworthy that even in some states that have adopted the merger doctrine, the doctrine itself is limited by the language of the felony-murder statute. Under Kansas law, the felony-murder doctrine applies only if the underlying felony, viewed in the abstract, is inherently dangerous to human life and if the elements of the underlying felony are so distinct from the homicide so as not to be an ingredient thereof. 
State v. Smallwood
, 264 Kan. 69, 91, 955 P.2d 1209, 1226 (1998). Thus, the judicially created rule had been a “single assaultive incident of abuse of a child which results in the death of the child merges with the killing and constitutes only one offense.” 
Smallwood
, 264 Kan. at 91, 955 P.2d at 1226. Further, evidence of prior acts of abuse could not be used to escalate the charge into felony murder. Such prior acts could be prosecuted as separate crimes of abuse but could not be used to bootstrap felony child abuse into a felony-murder charge. 
Smallwood
, 264 Kan. at 92, 955 P.2d at 1226. However, the 
Smallwood 
court noted, subsequent to the cited decisions dealing with the merger doctrine in the context of felony child abuse, the Kansas legislature amended the first degree murder statute as well as the statute defining inherently dangerous felonies. 
Smallwood
, 264 Kan. at 93, 955 P.2d at 1227. In the revised statute, felony abuse of a child is one of the enumerated felonies. The definition also provides that the enumerated felonies shall be deemed inherently dangerous “whether or not” they are so distinct from the homicide that they are an ingredient thereof. 
Smallwood
, 264 Kan. at 93, 955 P.2d at 1227, citing Kan. Stat. Ann. §21–3436 (1995). The state supreme court concluded that “the legislature intended that anyone who causes the death of a child while committing the act of abuse of a child to be guilty of the crime of first-degree felony murder.” 
Smallwood
, 264 Kan. at 94, 955 P.2d at 1228. Thus, the merger doctrine may still be a part of Kansas law, but it may not be applied when the felony is one that the legislature has explicitly identified as a proper predicate felony for a charge of felony murder. See also 
State v. McCann
, 907 P.2d 239, 240-41 (Okla. Crim. App. 1995) (legislature’s enumeration of a crime in the felony-murder statute shows its “intent to punish deaths which occur during the commission of an enumerated felony as felony murder,” thus the merger rule is not applicable in such cases).

Same-Act Doctrine

Under the same-act doctrine, application of the felony-murder rule is precluded whenever the act that constitutes the predicate felony is the same act that results in the death of the victim. Although this may appear to be a mere restatement of the merger doctrine, it is in fact an expansion of the merger doctrine to any predicate felony, whether or not it involves assaultive conduct.

For example, under this doctrine, the defendant who commits arson for profit cannot be convicted of felony murder if, unknown to the arsonist, there is a person inside the structure who dies in the flames. Because the act that constitutes the felony–starting the fire–is the same dangerous felonious act that causes the death of the victim, a conviction for felony murder is precluded. In contrast, application of the merger doctrine would not bar application of the felony-murder rule to this arsonist.

Massachusetts appears to have adopted the same-act doctrine, which, perhaps, is more accurately described as the “different act rule.” In 
Commonwealth v. Kilburn
, 438 Mass. 356, 359, 780 N.E.2d 1237, 1240 (2003), that state’s highest court stated that the doctrine of felony murder requires that the conduct constituting the felony be separate from the act of personal violence that causes the death. Kilburn was properly convicted of felony murder based on the predicate felony of armed assault in a dwelling because he committed two separate assaults–first, brandishing a pistol with the intention of arousing fear in the victim and, second, shooting him. 
Kilburn
, 438 Mass. at 359, 780 N.E.2d at 1241. See also 
Commonwealth v. Smiley
, 431 Mass. 477, 489, 727 N.E.2d 1182, 1192 (2000) (defendant was properly convicted of felony murder because the initial assault designed to gain entry into the victim’s dwelling was separate from the act necessary to commit the unlawful killing). 

Collateral-Felony Doctrine

New Mexico courts have adopted a third approach to address the concern that “most second degree murders might be charged as first degree murders” under the felony-murder statute, “absent some limitation on the range of appropriate felonies.” 
State v. Varela
, 128 N.M. 454, 460, 993 P.2d 1280, 1286 (1999). To convict a defendant of first degree felony murder, the State must show not only a causal relationship between the felony and the homicide and that the felony is inherently or foreseeably dangerous to human life, but also that the felony was “independent or collateral to the homicide.” 
Varela
, 128 N.M. at 460, 993 P.2d at 1286. As applied, this rule requires that the predicate felony not be a lesser-included offense of second degree murder, which, under New Mexico law, is “knowing” murder. In other words, the court asks whether, in the abstract, “it is possible to commit second degree murder without committing some form of the dangerous felony ***.” 
Varela
, 128 N.M. at 461, 993 P.2d at 1287. “Under this analysis, it would be impossible to be convicted of felony murder if the underlying felony was aggravated assault or aggravated battery because it would be impossible to commit second degree murder without committing some form of both ***.” 
Varela
, 128 N.M. at 461, 993 P.2d at 1287. 

Analysis of Illinois Decisions

In the stereotypical felony-murder case, an armed robber enters a store and demands money. The clerk hesitates, or resists, or perhaps merely makes a sudden movement that startles the robber, who fires his weapon, killing the clerk. It is immaterial whether the robber pulls the trigger intending to kill the clerk, or knowing that the clerk’s death is substantially likely to result, or wanting only to impress the clerk with the seriousness of his demand, or entirely by accident. 
People v Ramey
, 151 Ill. 2d 498 (1992); see also 
People v. McCarty
, 329 Ill. App. 3d 969, 982 (2002) (State is not required to prove that defendant could foresee the death or intended to commit murder; State need only show intent to commit the underlying felony). The armed robber is guilty of felony murder because when he performed the act that caused the death, he was committing the forcible felony of armed robbery. See, 
e.g.
, 
People v. Casillas
, 195 Ill. 2d 461 (2000); 
People v. Richardson
, 123 Ill. 2d 322 (1988). It is certain in such a case that the robber entered the store for the purpose of robbing it. Indeed, the predicate felony of armed robbery is complete before he ever pulls the trigger. Thus, there is clear evidence of his intent to commit the predicate felony. In addition, the separate conduct of shooting the store clerk after the felony is complete makes it obvious that the robbery-gone-wrong constitutes felony murder.

The hard case arises when the 
actus reus 
of the charged predicate felony is the same act that causes the death. This court has never expressly adopted the same-act doctrine by holding that a charge of felony murder may not stand unless the conduct that caused the death of the victim is separate from and in addition to the 
actus reus
 of the underlying felony. On the contrary, this court affirmed the defendant’s conviction of felony murder in 
Viser
, in which there was no conduct other than that necessary to carry out the predicate felony of aggravated battery. 
Viser
, 62 Ill. 2d at 580. Further, Illinois has not adopted the merger doctrine or the collateral-felony doctrine, either by statute or by judicial decision. Indeed, in 
Viser
, this court expressly rejected the “theory of merger” in light of the legislature’s “forthright characterization of aggravated battery as one of the forcible felonies that will trigger a charge of felony murder.” 
Viser
, 62 Ill. 2d at 579-80. 

Twenty-four years later, in 
Morgan
, the appellate court held that “the predicate felony underlying a charge of felony murder must involve 
conduct with a felonious purpose
 other than the killing itself.” (Emphasis added.) 
People v. Morgan
, 307 Ill. App. 3d 707, 714 (1999). That is, the 
actus reus 
of the underlying felony (conduct) must be committed with an “independent felonious purpose.” 
Morgan
, 307 Ill. App. 3d at 714. If, as in 
Morgan
, the forcible felonious conduct is committed with the intent to kill, rather than with the purpose of committing the independent felony, a charge of felony murder may not stand.

The concurring justice in the appellate court decision in 
Morgan
 noted that, under this rule, some aggravated batteries and aggravated discharges of firearms would remain the basis for a felony-murder charge, so long as the crimes were not merely incidental to murder. 
Morgan
, 307 Ill. App. 3d at 719 (Steigmann, J., concurring). He then, however, suggested an additional requirement that the appellate court did not adopt. The concurring justice suggested that such crimes could serve as the predicate felony only where they involved “conduct other than that inherent in the killing itself.” 
Morgan
, 307 Ill. App. 3d at 719 (Steigmann, J., concurring). This is the same-act doctrine, which requires that the predicate felony involve criminal conduct in addition to the act that causes the death of the victim. Adoption of such a rule would have had the effect of overruling 
Viser
, which this court continues to reaffirm even in the present case. 

This court affirmed the appellate court’s judgment that the felony-murder counts against Morgan were improper. 
Morgan
, 197 Ill. 2d 404. However, in doing so, it altered the focus of the analysis. First, this court stated, incorrectly, that the appellate court concluded that “felony murder was limited to cases in which the predicate felony consisted of 
conduct other than
 that inherent in the killing itself.” (Emphasis added.) 
Morgan
, 197 Ill. 2d at 444. This was not the holding of the appellate court. Instead, it is the formulation suggested by the concurring justice and is inconsistent with 
Viser
. This court noted the inconsistency and, later in the opinion, referred with approval to the appellate court’s requirement of an independent felonious purpose. 
Morgan
, 197 Ill. 2d at 446. 

This court also noted that the forcible felonies committed by Morgan “were inherent in, and arose out of, the fatal shootings” of his grandparents. 
Morgan
, 197 Ill. 2d at 447. This is true as a statement of fact. Jon Morgan admitted that he pointed a gun at each of his grandparents and pulled the trigger with the intent to kill. He offered evidence of provocation and imperfect self-defense in an effort to mitigate his crimes to second degree murder. 
Morgan
, 197 Ill. 2d at 411-12. However, while the phrase “inherent in and arising out of” is an accurate description of the facts of the case, it is not a useful rule for other cases. When one commits the forcible felony of aggravated discharge of a firearm and unintentionally causes a death, it cannot be said that the firing of the gun was inherent in and arose from the killing. The opposite is true–the killing arises or flows from the defendant’s intent to commit the independent felony and his acting on that intent. Nevertheless, this court adopted this language as the statement of the rule for determining when a forcible felony may serve as the predicate felony to a charge of felony murder. 
Morgan
, 197 Ill. 2d at 447.

Our opinion in the present case states that “in this type of case” (slip op. at 9), the State must prove intentional or knowing murder to punish the defendant like a murderer. The 
Morgan
 “type of case” is one where the defendant admits intent to kill, but argues that his crime is second degree murder rather than first degree murder. Having admitted the intent to kill, he must be given the opportunity to present his case for provocation or imperfect self-defense to the fact finder. The State may not short-circuit his ability to mitigate his crime to second degree murder by characterizing the act of murder as felony murder, at least not without offering proof that the defendant acted for the specific purpose of committing the underlying felony.

Pelt
 was not a 
Morgan
 “type of case.” Slip op. at 9. In 
Pelt
, this court noted its prior approval of the appellate court’s holding in 
Morgan
 that to convict a defendant of felony murder the State is required to prove that in committing the predicate felony the defendant acted with an independent felonious purpose. 
Pelt
, 207 Ill. 2d at 441. However, the majority then went on to consider whether Pelt’s aggravated battery of an infant “was an act that was inherent in, and arose out of, the killing” of the child. 
Pelt
, 207 Ill. 2d at 442. The majority not only failed to recognize that it was Morgan’s intent to kill that rendered his conduct “inherent” in the act of killing, it also breathed new life into the same-act doctrine by stating that the “act of throwing the infant” that was the basis for the aggravated battery conviction was “also the same act underlying the killing.” 
Pelt
, 207 Ill. 2d at 442. Further, the 
Pelt
 majority reformulated the question as whether the predicate felony “involved 
conduct
 with a felonious purpose other than the 
conduct
 which killed the infant.” (Emphases added.) 
Pelt
, 207 Ill. 2d at 442. 

The only reasonable reading of the language used in 
Pelt 
is that the predicate felony must not only have a felonious purpose apart from killing the victim, such as rape, robbery, or kidnaping, but also must involve at least two separate acts–first, the 
actus reus 
necessary to prove the elements of the felony itself and, second, the conduct that kills or causes the death of the victim. As I noted in my dissent in 
Pelt
, this rule, “which focuses on the defendant’s conduct rather than his mental state, if literally applied, would preclude a charge of felony murder unless the defendant engaged in forcible felonious conduct in addition to the act that caused the killing.” 
Pelt
, 207 Ill. 2d at 446 (Garman, J., concurring in part and dissenting in part). This rule would apparently preclude a conviction for felony murder based on kidnaping where the kidnaper commits only one act, luring a child into his car with a promise of candy, and then the child dies from an asthma attack for lack of access to her inhaler. 

Less than a year after this court issued its decision in 
Pelt
, we are faced with a case in which the defendant committed only one criminal act yet we are affirming his conviction for felony murder. Although I dissented, in part, in 
Pelt
, and I am troubled by this court’s reasoning in 
Morgan
, I am bound by the doctrine of 
stare decisis
 to accept these cases as settled law. Reasoning from 
Morgan
 and 
Pelt
, this court now suggests that the way to determine whether a defendant’s conduct was inherent in and arose out of the killing is to ask whether the “same evidence” was used by the State to prove both the predicate felony and the murder. Slip op. at 10. In the present case, “to convict defendant of mob action, it was not necessary to prove that defendant struck Richard, much less performed the act that caused the killing.” Slip op. at 11. Thus the predicate felony of mob action “involved conduct with a felonious purpose other than the conduct which killed Richard.” Slip op. at 11. Apparently, Davis engaged in conduct with a felonious purpose and the members of the mob, cumulatively, engaged in the additional conduct that killed Richard Skelton. Further, my colleagues conclude that this result is consistent with 
Viser
, in which the defendant was one of several individuals who punched and kicked the victim and it was not clear which attacker “caused the fatal blow.” Slip op. at 11. 

What our opinion says, in effect, is that if it is possible to prove the elements of the underlying forcible felony and also, using different evidence, to prove that “in performing the acts which cause the death” the defendant was “attempting or committing a forcible felony other than second degree murder” (720 ILCS 5/9–1(a)(3) (West 1998)), conviction of felony murder is proper. This is the same-act doctrine, under which the State must prove that the defendant committed the
 actus reus 
of the underlying felony and, in addition, caused the death of the victim by engaging in some other conduct as he attempted or committed the forcible felony. I suggest that if this court is going to adopt this doctrine, it should do so unequivocally and thereby give clear guidance to prosecutors and trial courts.

In my opinion, however, the same-act doctrine completely ignores the intent of the legislature as expressed in the statutory definition of forcible felony, which includes “predatory criminal sexual assault of a child, aggravated criminal sexual assault, criminal sexual assault, robbery, burglary, residential burglary, aggravated arson, arson, aggravated kidnaping, kidnaping” and other crimes. 720 ILCS 5/2–8 (West 1998). Nothing in this statutory definition or in the felony-murder statute itself suggests a legislative intent that the provision apply only in cases such as the stereotypical store robbery case described above where the defendant commits two separate acts, one that constitutes the felony and one that causes the death of the victim. 
Indeed, the inclusion of arson on this list indicates a legislative intent that the single felonious act of lighting a fire with the intent to defraud an insurer (720 ILCS 5/20–1 (West 1998)) can serve as the predicate felony for a charge of felony murder if someone present in the structure, entirely unknown to the arsonist, is killed as a result. 

In sum, although I agree with the result in this case, and although I accept 
Morgan
 and its progeny as the law of this state, I cannot agree that either the merger doctrine or the same-act doctrine are proper limits on the application of our felony-murder statute. The General Assembly has clearly expressed its intention that an act constituting a forcible felony–other than second degree murder–is a sufficient basis for the imposition of liability for felony murder, thus precluding our adoption of the same-act doctrine. 

The merger doctrine is similarly precluded by the purpose of the felony-murder doctrine, which is to hold a felon is responsible for the direct and foreseeable consequences of his actions. 
People v. Lowery
, 178 Ill. 2d 462, 470 (1997). The logic behind the felony-murder statute is that one who chooses to commit a forcible felony will endeavor to limit his use of violence to avoid being automatically subject to a murder prosecution if someone dies as a result of the commission of the felony. 
People v. Shaw
, 186 Ill. 2d 301, 322 (1998). See also 40 Am. Jur. 2d 
Homicide
 §64 (1999) (“The common-law rule was that if a person killed another in doing or attempting to do an act amounting to a felony, the killing was murder. Practically all jurisdictions have enacted statutes providing that a homicide perpetrated during the commission, or attempted commission, of any felony, or more frequently, of certain specified felonies *** shall be deemed murder or murder in the first degree. The effect of such statutes is to impute malice or deliberation to a felon so as to make the incidental homicide murder in the first degree. Hence, under most, but not all, such statutes, where the killing occurs 
in the perpetration of any of the specified crimes
, whether or not the defendant had the intent to kill is immaterial and irrelevant. Thus, any time the commission of a felony causes death, even though unintentional or accidental, the legal malice from the felony is sufficient to transform the killing into murder. 
The defendant need only intend to commit the underlying felony
, no other mens rea is required” (emphasis added)).

Thus, in each case where felony murder is charged, the inquiry should be whether the State has charged a forcible felony as the predicate felony, whether the defendant set out to commit the forcible felony, and whether the death of the victim occurred during the attempt or the commission of and as a result of the felony.

In 
Morgan
, the defendant admitted that he acted with the intent to kill. He could not be convicted of felony murder because he committed the fatal assaults for the sole purpose of carrying out that intent. 

In 
Pelt
, there was no evidence of the defendant’s 
mens rea 
aside from the forcible felonious conduct itself. No one, other than Pelt, knows whether he threw the infant against the dresser with the intent to kill, with the knowledge that he would likely cause death or grave bodily harm, or “merely” with the intent to batter the child. As I indicated in my dissent in that case, in my opinion, the answer to this question should be within the province of the jury. If the State charges intentional, knowing, and felony murder in such a case, the jury should be permitted to consider all three counts of murder and to infer the defendant’s mental state from his actions. 
Pelt
, 207 Ill. 2d at 447 (Garman, J., concurring in part and dissenting in part). See also 
Godsey
, 60 S.W.3d 759 (affirming felony-murder conviction based on aggravated child abuse of seven-month-old victim); 
O’Blasney
, 297 N.W.2d 797 (affirming felony-murder conviction based on felony child abuse of four-month-old victim).

In the present case, defendant intended to participate in the forcible felony of mob action, which resulted in the death of Richard Skelton. He is guilty of felony murder.

I am fearful, however, that our latest pronouncement on the question of proper predicate felonies for felony murder obscures, rather than clarifies, this important issue. I hope that when the next case arises, the members of this court will either unequivocally adopt the merger doctrine or the same-act doctrine, thus overruling 
Viser
, or else reject them, overrule 
Pelt
, and clearly state that a conviction for felony murder may stand if and only if the State has proven that the defendant acted for the purpose of committing an independent felony apart from the homicide.